UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

SCOTT JOSEPH TRADER
Plaintiff/Movant NO. 22-CV-

VS. NO. 2:17-CR-14047-MIDDLEBROOKS

UNITED STATES OF AMERICA
Defendant/Respondent

MOVANT SCOTT JOSEPH TRADER'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255

Movant, SCOTT JOSEPH TRADER, respectfully files this Memorandum of Law in Support of his Section 2255 Motion to Vacate Sentence and States as follows:

I. The Legal Standards Governing Ineffective Assistance of Counsel Claims.

A prisoner is entitled to an evidentiary hearing on a Section 2255 Motion unless the motion, files and records of the case conclusively show that the prisoner is not entitled to relief. 28 U.S.C. § 2255. The court on review "must accept all of the petitioner's alleged facts as true and determine whether the petitioner has set forth a valid claim." Agan v. Dugger, 835 F.2d 1337, 1338 (11th Cir. 1987).

"An accused is entitled to be assisted by an attorney... who plays the role necessary to ensure that the trial is fair." Strickland v. Washington, 466 U.S. 668, 685 (1984) In other words, the right to counsel is the right to effective assistance of counsel. Id. at 686. Strickland established a two pronged test for determining whether a defendant has received ineffective assistance of counsel. Under the first prong, the court must determine "whether counsel's performance was deficient." Strickland, 466 U.S. at 687. Counsel's performance is deficient where it falls below an objective standard of reasonableness. Id. at 688

Under the second Strickland prong, the court must determine whether the deficient performance of counsel prejudiced the defendant's case. To satisfy the prejudice prong of the test, a defendant need not show that, but for counsel's errors, the outcome of the proceeding would more likely than not have been different. Strickland, 466 U.S. at 693. Rather, a defendant must only show that "there is a reasonable probability, that, but for counsel's unprofessional errors, the result of the proceeding would have been different." A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694

In the context of a guilty plea, a habeas petititioner can show prejudice by demonstrating "a reasonable probability that, but for counsel's errors, he would have not pleaded guilty and would have insisted on going to trial". Lee v. United States, 137 S.Ct. 1958, quoting: Hill v. Lockhart, 474 U.S. 52, 59 (1985)

Actual Innocence claims may overcome procedural default. McQuiggin v. Perkins, 133 S.Ct. 1924, 1932 (2013). "Actual Innocence" means factual innocence, not mere legal insufficiency. Bousley v. United States, 523 U.S. 614, 623 (1998)

II. Trader is actually innocent of violating 18 U.S.C. 2422(b) (count 1), which prohibits anyone from engaging in "any sexual activity for which any person could be charged with a criminal offense". The underlying completed "sexual activity" Trader's violation is based upon, is two State of Florida offenses involving child pornography. However, according to the federal definition of "sexual activity" relating to the inclusion of child pornography, these two underlying offenses do not fall within the meaning of "sexual activity" for a violation of 2422(b). In addition, Trader was not "engaged" in the production of the child pornography, an essential element under the plain language of the statute, and is therefore innocent of the violation.

Trader was charged with a violation of 18 U.S.C. 2422(b), which in relevent part prohibits: The enticement of a minor to engage in sexual activity for which any person can be charged with a criminal offense.[1] There are four elements required for a violation of this statute, only two are relevent here. The first element requires the defendant to achieve a mental state over a minor, and then using that mental state to have that minor engage in sexual activity.

When researching what "Sexual Activity" means, it's discovered that "This Statute, which is found in chapter 117 of title 18 of the United States Code, does not define 'Sexual Activity'".[2] Moreover, "Sexual activity is not a defined term in the federal criminal code"[3] anywhere. The only known definition is that congress specifically defined sexual activity to include the production of child pornography, as amended by 18 U.S.C. 2427.[4]

18 U.S.C. 2427 in full is the statute for the "Inclusion of offenses relating to child pornography in definition of sexual activity for which any person can be charged with a criminal offense" and it states "In this chapter (18 U.S.C. 2421 et seq.), the term 'sexual activity for which any person can be charged with a criminal offense' includes the production of child pornography, as defined in Section 2256(8)."

This means one of the many forms of conduct 18 U.S.C. 2422 prohibits, as explained by 18 U.S.C. 2427, is the same conduct prohibited by 18 U.S.C. 2251(a), the production of child pornography.[5] However, the statutes broad reach, by its own construction does not extend to the conduct prohibited by 18 U.S.C. 2252, the possession and distrubition of child pornography. Congress clearly considered the "inclusion of offenses relating to child pornography" when defining sexual activity, but only included the production of it within its definition.[6]

The second element relevent here requires and incorporates within it, an underlying offense[7] that if committed, any person can be charged with a criminal offense.[8] As relating to Trader, this means that his alleged

conduct on the nights of May 15 2017 and May 30 2017 (when the violation of 2422(b) occurred) would first have to fall within the federal definition of sexual activity, and second, be chargable conduct. These two parts equal one whole element, which then incorporates the offense that the defendant could have been charged with. In Trader's case, the conduct was: The use of a cell phone (interent) by an adult, to entice a minor to take and send one nude photo. The offenses that he could have been charged with, as stated by the government are: Florida Statute 827.071(3), promoting a sexual performance by a child; and 827.071(5)(a), possessing a sexual performance by a child.[9]

The government however did not specify which of these subsections of Florida Statute 827.071 its relying upon for its basis of conviction for 18 U.S.C. 2422(b), and instead relys on them both. But when charging someone with 2422(b) for an offense relating to child pornography, only the production of child pornography falls within the federal definition of sexual activity.[10] In the instant case, one of the multiple statutory violations the government relys upon for conviction, if understood correctly, is the successful enticement of a minor to engage in the sexual activity of possession of child pornography.

In past cases, a defendant charged with 2422(b) with an underlying offense involving child pornography, have relyed upon the the federal statute prohibiting the production of child pornography, 18 U.S.C. 2251, or relyed upon a state statute prohibiting the production of child pornography which tracks the language of the federal one.

None have relyed upon the possession of child pornography either at the State or federal level as an underlying offense, nor could they, as that would lead to absurd and erroneous results. Such is the case here, where the government has essentially defined the term "sexual activity" to include the possession of a photograph.

Subsequently, when combining the governments definition of sexual activity, with the statutory construction and interpretation of 2422(b), which again prohibits the enticement of the minor to engage in the sexual activity which the defendant could be charged with a criminal offense, it creates the absurd result that the minor is somehow engaged in the possession of the photograph that the defendant could be charged with possessing.

The second underlying criminal offense the government depends upon for its basis of conviction under 2422(b), is a violation of Florida Statute 827.071(3), Promoting a sexual performance by a child.[11] However there are multiple problems with charging this underlying criminal offense, the most relevent being that "the least culpable conduct the statute criminalizes is the distribution of a photograph of a child less than 18 years of age".[14] This does not fall under the federal definition of sexual activity for a violation of 2422(b).

Florida Statute 827.071(3) states in relevent part: "A person is guilty of promoting a sexual performance by a child when, knowing the character and content thereof, he or she produces, directs, or promotes

any performance which includes Sexual conduct by a child less than 18 years of age." (emphasis added)

As an initial matter, Subsection (3) of Florida Statute 827.071 Prohibits multiple forms of Criminal conduct relating to child pornography, and each form of conduct has different alternative means for a defendant to violate the Statute. In other words, the terms "produces, directs, or promotes" each prohibit different conduct. "Produce" or "direct" are not defined by Statute, and should be given their plain and ordinary public meaning. Promote however, is defined by Statute as: "to procure, manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmute, publish, distribute, circulate, disseminate, present, exhibit, or advertise or to offer or agree to do the same." Florida Statute 827.071(1)(d). So "Promote means, among other things, to 'distribute'."

In their acknowledgment of offense elements, the government lists the whole Subsection (3), of 827.071. Then, within Subsection (3), emphasized in bold lettering are the words "produces, directs, or promotes any performance which includes Sexual conduct by a child less than 18 years of age." This language either implys that Trader's conduct spanned the entire scope of the Statute, or the government did not Specifically identify by what means Trader violated the Statute. But as the Eleventh Circuit has already recognized, because Trader was charged and convicted with a completed act, the government can not charge multiple crimes with the possibility Trader's conduct could potentially violate at least one of them. "obviously, if a defendant has Successfully

persuaded a minor to engage in an unlawful sexual act, this will typically mean that the act was completed and the likelihood of multiple potential statutory violations is greatly reduced. Indeed, in such a circumstance, the defendant will be charged not with attempt, but with actually enticing a minor to commit the specific sex act that was completed and that will be listed in the indictment." United States v. Jockisch, 857 F.3d 1122, 1133 n.13 (11th Cir. 2017)

The government can not list potential violations for a completed act. And even if they could, all the potential violations would have to fall under the federal definition of sexual activity relating to child pornography. Because the least culpable conduct criminalized by Statute 827.071(3) is distribution, the alternative means here do not.

Separately, Traders stipulated conduct with MV1 does not amount to a violation of Section 2422(b). The stipulation of facts in support of Trader's guilty plea summarizes his conduct leading to the violation as follows: "HSI saw chats from Trader to the victim that included, among other things, numerous requests from him for the victim to send him nude images. At first, the victim provided Trader several pictures of her fully clothed, which clearly indicated she was a preteen female. Trader also asked the victim, among other things, how old she was and she told him she was nine, to which he replied 'Aw, you're pretty for your age, you look sexy in those pajamas.' In response to Trader's requests, the victim eventually sent at least one photo of her vagina and one

photo of her pulling her shirt up, exposing her nipples. (count 1 - Enticement of a minor to engage in Sexual Activity)." (emphasis added)[12]

Trader's Stipulated conduct, while repugnant, does not amount to "Sexual Activity", i.e. the production of child pornography. There is no evidence within the factual basis to support a conviction that Trader enticed a minor to produce a photograph. And while there is ample evidence based on the stipulated facts that Trader attempted to procure a nude photograph, and successfully did receive child pornography, neither one falls within the federal definition of "Sexual Activity" in relation to child pornography.[13]

Finally, there is no evidence in Discovery that a photograph of MV1 was ever produced for Trader. A forensic exam of MV1's electronic device, and more specifically, the time and date stamp of the two images MV1 sent to Trader, was never done. This is important because on the night of May 30, 2017, when the Thomasville Police Department initially reported to MV1's home, her mother signed a consent to search form for her daughter's tablet.

During the initial search of that tablet, one of the responding officers "looked through the messages on the Say Hi app and found several other conversations with men that [MV1] had on her phone. Including 'Scott' there were five men messaging [MV1] who at some point admitted to knowing she was young/underage and still requesting photos of her or sending her nude photos of themselves."

The officer continued: "[MV1] also has other messaging apps on her tablet and access to the internet which I did not go through. While [MV1's mother] was in my vehicle she asked to check the photo gallery on [MV1's] tablet and we observed the naked photo's of herself she sent to 'Scott' along with photos of 'Scott's daughters' he sent her saved to her gallery. She also had nude photo's of other men saved to her gallery that were sent to her through the Say Hi app."

MV1 had multiple conversations with men who all requested nude photos of her, and sent her nude photos of themselves. She had these photos saved to her photo gallery in her tablet. She also had the photos of herself which she sent to Trader, saved to her gallery. Importantly, no one knows how long the photos of MV1 were saved to her gallery, or how many times they were distributed from her gallery. Trader is convicted of enticing MV1 to produce these two photographs, but she could have produced these two photographs for anyone of the men she was having a conversation with. Without examining the time and date stamp of the photos, there is no way to be sure. Notably, the government has never said MV1 "produced" these photographs for Trader. The only verb the government has ever used is "sent". MV1 "sent" them to Trader and that sounds good. But because Trader was convicted of a completed act and not an attempt, 2422(b) and 2427 require more than just "sent", more then just a substantal step in an attempt to produce. The statutes and the subsequent case law require the "sexual activity" to actually have taken place. There is no evidence of this anywhere, and the government has never offered any.

Actual prejudice is shown by establishing a miscarriage of justice. Howard v. United States, 374 F.3d 1068, 1072 (11th cir. 2004) The conviction of one who is actually innocent is itself a miscarriage of justice. See: Sawyer v. Whitley, 505 U.S. 333, 339 (1992)

Accordingly, for all of the foregoing reasons, and for the grounds raised in Trader's 2255 Motion, Trader is actually innocent of a 2422(b) Violation because: 1. his conduct does not fall within the definition of sexual activity; and 2. he did not engage with, or cause the minor to engage in, the production of child pornography.

III. Trader's Defense attorney rendered ineffective assistance because he failed to investigate the specific facts of Trader's case, the charge against him, and the case law in effect at the time of Trader's plea. Specifically and for the reasons set forth in Section II, when counsel failed to dismiss count 1 of the indictment, and when he advised Trader to plead guilty to it.

A defendant alleging ineffective assistance of counsel must show that: 1. Counsel's performance did not reach an objective standard of reasonableness; and 2. counsel's deficient performance prejudiced the defense, depriving the defendant of a trial whose result is reliable. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Deficient performance is that which is "not within the wide range of competence demanded of attorney's in criminal cases." Id., at 687 (internal quotation marks omitted). Prejudice is established when "there is a reasonable probability,

but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., at 694.

Where a defendant enters a guilty plea upon the advice of counsel, "the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985). Strickland's prejudice prong is modified in the context of a guilty plea, and prejudice is shown if "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." Id., at 59. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

As set forth in Section II, count 1 charged Trader with successfully enticing a minor to: 1. "engage" in 2. any "sexual activity" which 3. he could be "charged with a criminal offense". These necessary elements of 2422(b) were of critical importance to the governments conviction of him on this count. The government bore the burden of proof that Trader met each of these elements. For the reasons forenamed in Section II, Trader's counsel was ineffective because he failed to investigate: 1. the specific facts of Trader's case; 2. the charge against him; and 3. the relative case law in effect at the time of Trader's guilty plea.[15]

The current form of 2422(b) was enacted in 1998, with 2427 added the same year.[16] Until 2021, there was an open question of law in the Eleventh Circuit as to the definition of "sexual activity" in 2422(b).[17] Unless the "sexual activity" involves child pornography. 18 U.S.C. 2427. The limits

of 2422(b), set by 2427, are clear. Because one of the State of Florida Statutes relied upon by the government is the possession of child pornography, Trader's counsel was ineffective for failing to dismiss count 1, and advising Trader to plead guilty to it. Additionally, because the other State of Florida Statute relied upon by the government includes offense conduct such as distribution of child pornography; counsel was again ineffective for failing to dismiss count 1, and for advising Trader to plead guilty to it.

Moreover, because Eleventh Circuit precedent at the time of Trader's guilty plea indicated a defendant could not be convicted of violating Section 2422(b)'s completed act requirement listing multiple potential statutory violations as the predicate offense,[18] counsel was ineffective for failing to dismiss count 1, and advising Trader to plead guilty to it.

Fourth, because "criminal offense" is not defined by statute 2422(b) to include State and federal offenses, and because this issue still has not been addressed by the Eleventh Circuit, Trader's case presented a non-frivolous, meritorious claim as to why State offenses do not apply to Section 2422(b) violations.[19] His counsel was ineffective when he failed to dismiss count 1 based on this ground, and further ineffective for advising Trader to plead guilty to it.

Finally, because Trader's counsel failed to investigate who MV1 produced the two photo's for, which she later "sent" to Trader, and because an essential element in a completed act of 2422(b) is actually enticing the minor to engage in, this case the production of the only child pornography involved in this count, and because counsel had knowledge of MV1 having had sexual communications with at least four other adult men, counsel was wholly ineffective for advising Trader to plead guilty when he had a viable defense[20] to count 1 he knew nothing about, and advising him to sign a factual basis which lacked support for the Section 2422(b) violation.

The prejudice Trader suffered as a result of counsel's deficient performance individually, and combined is substantial. Trader is serving a total sentence of LIFE. Count 1 is the only count of which he is convicted, with a maximum of LIFE. Without that conviction, Trader could not face that sentence, as the maximum statutory penalty for each of the other four counts in his conviction is a term of years. Therefore, Trader's sentence is itself proof of the prejudice, which can not be ignored. Had counsel informed Trader of the forenamed defenses to count 1, the result of the proceeding would have been different. Trader would not have pled guilty to this count, and instead would have proceeded to trial.

IV. <u>Appellate counsel was ineffective for failing to argue in Trader's appeal that he: 1. was actually innocent of Count 1; 2. there was insufficient evidence; and 3. the factual basis does not support a conviction under Section 2422(b).</u>

For the reasons explained in Sections II and III, Trader's appellate attorney was ineffective for failing to argue in his appeal a claim of actual innocence. A defendant who fails to assert a claim is entitled to a plain error review of that claim when raised for the first time on appeal. Under a plain error standard, the defendant bears the burden to show there is: 1. Error, 2. that is plain, and 3. that affects substantial rights. See: United States v. Kushmaul, 984 F.3d 1359, 1363 (11th Cir. 2021) "when the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error". Id.

In this case, the language of all statutes relied upon for count 1 are explicitly clear.[21] For the reasons set forth in Section II, Trader is actually innocent of violating Section 2422(b), and there was no evidence or factual basis to support a conviction. Additionally, appellate counsel was made aware of these specific issues with Trader's Section 2422(b) conviction,[22] and for some unexplainable reason, counsel did not raise these issues on appeal, even after Trader expressly told him to.

Thus, but for failure of appellate counsel, the Eleventh Circuit would have held that it was plain error to convict Trader and sentence him to LIFE for count 1. Further, they would have instructed the district court to vacate Trader's Section 2422(b) conviction and LIFE sentence, and remand back for further proceedings.

V. Trader's appellate counsel was ineffective for failing to raise issues for the first time in the initial brief, as opposed to the reply brief

Where a defendant enter's a guilty plea upon the advice of counsel, "the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Hill, 474 U.S. 52, 56 (1985) Strickland's prejudice prong is modified, and prejudice is shown if "there is a reasonable probability that, but for counsel's error's, [the defendant] would not have pleaded guilty and would have insisted on going to trial." Hill, at 59. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Additionally, a defendant is entitled to the effective assistance

of counsel on direct appeal, and should be evaluated under the Strickland standard of prejudice. Smith v. Robbins, 528 U.S. 259, at 285-86 (2000). To show prejudice under Strickland, the defendant "must show that the deficient performance prejudiced the defense". Strickland, at 687. And prejudice is established when "there is a reasonable probability, but for counsel's unprofessional error's, the result of the proceeding would have been different. Strickland, at 694.

Trader signed a conditional plea agreement.[23] He did so after developing a strategy with counsel, which centered around bringing a specific argument on direct appeal.[24] However, when counsel filed the initial brief, Trader had no knowledge of it, it was poorly drafted, and barely included anything within it that counsel had discussed with Trader prior to signing the plea agreement. This is not a new complaint. Trader sent multiple pro se motions to the Eleventh Circuit after the brief was filed expressing his dissatisfaction with counsel.[25] Within these motions, Trader had asked the court for permission to supplement the brief, or alternatively remove counsel from the case and reset the briefing schedule. The motions listed enumerated reasons for this action, explained why, and included a proposed initial brief to supplement or replace the one counsel filed.[26]

After counsel responded to Trader's claims,[27] the government filed their brief,[28] and the court granted an extension of time to file a reply. Within that motion for an extension of time, counsel told the court he was going to incorporate Trader's proposed initial brief, into the reply brief.[29] Trader once again wrote the court, cited correspondence from counsel and Eleventh Circuit case law, and informed the court that counsel is suggesting to raise issues for the first time in a reply brief, which he is not permitted to do.[30] The court denied Trader,[31] and counsel filed a reply brief that was almost word for word what Trader had proposed supplementing to the initial, including arguments not raised within it.[32]

when the Eleventh circuit decided the case, they only addressed a limited amount of Trader's arguments and instead cited case law which said, un-surprisingly, that the court will not consider arguments raised for the first time in a reply brief. United States v. Trader, 981 F.3d 961, 969 (11th cir. 2020). Unexplainably, counsel, an attorney with decades of experience, clearly did not know or did not care to know this well established case law, even after his client informed him of it. The issues Trader wanted presented in the initial brief not only had merit, and were new questions of law after the Supreme court decided Carpenter v. United States, 138 S.ct 2206 (2018), but they were instrumental to Trader in deciding to plead guilty conditionally. It was always the plan between him and counsel to bring these arguments to the Eleventh circuit after Carpenter was decided. But what was brought within the initial brief is best described as a lazy, broad in scope attempt to argue the right to privacy in a defendant's IP address and e-mail address. Trader's narrowly crafted, specific arguments brought in the reply were not, and still have not been addressed by the Eleventh circuit.

The questions brought with these arguments include the main issue of Trader's appeal: whether the warrantless seizure and search of historical records created by a cell phone, revealing the location and movements of that cellphone user over 30 days is permitted by the fourth amendment - If the data revealing the location and movements were collected in the form of IP address information.

This is not the question the court decided, because it is not the argument put forth by counsel within the initial brief. That was the right to privacy of an IP address in general.[33] Not ones that are generated by a cell phone user, so the court never addressed the right to privacy in the cell phone user's[34] physical movements. The reply brought this argument to the courts attention, based on Carpenter and United States v. Jones, 565 U.S. 400, 132 S.ct. 945 (2012),

but the court did not consider it. Trader, at 969. Additionally, counsel's argument led the court in Trader to conclude "Many different devices access wireless internet networks: computers, tablets, gaming consoles, household appliances, and more. And each of these devices has an internet protocol address. We can not conclude that internet protocol addresses are cell phone records when they are a feature of every electronic device that connects to the internet." Trader, at 969 (internal quotation's omitted) 35

Counsel in the initial brief mentioned a right to privacy in IP addresses, and then pointed the court towards Carpenter. But he seemingly left the primary argument Trader wanted made, up to the court to make for him. However when Trader signed his conditional plea agreement, he expected his counsel, not the court, to argue on his behalf. The main question Trader wanted presented to the court, which was the deciding factor in signing the conditional plea, was not brought to the court until the reply brief. Had it not been for counsel's error, Trader would have prevailed on appeal. This performance by counsel can only be described as falling below an objective standard of reasonableness.

In another argument not considered by the court, based in part on: United States v. Karo, 468 U.S. 705, 104 S.Ct 3296 (1984), Kyllo v. United States, 533 U.S. 27, 121 S.Ct 2038 (2001), and United States v. Jones, 565 U.S. 400, 132 S.Ct 945 (2012), the question brought within it was: Is a cell phone user's expectation of privacy within his home, and the physical movements to and from his home, hightened after the Carpenter decision, if the data revealing the location and movements were collected in the form of IP address information. Once again, because this argument was brought as part of the reply brief, the court did not consider it. Trader, at 969. 36

In sum, when Trader agreed to plea guilty, it was conditional. He was going to appeal after the Carpenter decision, and base that appeal around these

two questions. Counsel was fully aware of that strategy prior to signing the plea, immediately following the Carpenter decision,[37] and reaffirmed well before the inital brief was filed. This case is a prime example of where counsel's deficient performance is "not within the wide range of competence demanded of attorneys in criminal cases". Strickland, at 687. Even Trader, with no legal experience had realized counsel's incompetence had damaged his chances of prevailing on appeal, and tried to stop it. This can only add to the claim that Trader was not provided with effective assistance during that appeal.

Trader was prejudiced by this because had he known his specific argument and issues he wanted the court to address on appeal would not be considered,[38] he would not have signed the conditional plea agreement. He would have proceeded to trial. He could have later negotiated a different plea agreement, one where certain counts were dropped to reduce his maximum time in prison. The conditional part of the plea agreement was what Trader received as part of the give and take process of negotiating with the government.[39] And it was taken away due to counsel's misfeasance.

Separately, If counsel hadn't failed to effectively represent his client, he would have raised the most important issues of Trader's appeal within the initial brief as opposed to the reply brief. An effective attorney would have known well established caselaw within the circuit, or at the very least corrected his mistake once notified. Had the Eleventh circuit been presented the argument Trader wanted before the court, there is a reasonable probability the result of the proceeding would have been different. The Eleventh Circuit could have held Trader's fourth amendment rights were violated. The court could have remanded the case back to the District court with order's to vacate Trader's convictions, and allowed him to withdraw his plea of guilty. The court would have had any number of available recourses, but for counsel's ineffectiveness.

VI. Counsel was ineffective for failing to object in any meaningful way, to the introduction of a "Parenting Plan Evaluation" report, illegally obtained by the government, and which factored into the Judges determination when Sentencing Trader to LIFE.

The right to the effective assistance of counsel extends to Sentencing, and Should be evaluated under Strickland. See: Glover v. United States, 531 U.S. 198, 121 S.Ct. 696 (2001). Trader was not afforded this right. Counsel was ineffective for failing to object in any meaningful way, to the introduction of a "Parenting Plan Evaluation" Report, Conducted in 2013 as part of Trader's on-going child custody dispute.[40] This report is highly Confidential, Protected as private under the laws of the State of Florida[41], and the United States[42], and was obtained by the government illegally from Trader's electronic device.[43]

In 2013 and due to on-going child custody disputes, the Honorable Barbara W. Bronis, Judge of the Nineteenth Judicial Circuit in and for Saint Lucie County, Florida, ordered a "Parenting plan evaluation" and appointed an independent expert to conduct a Social investigation and Study, of both the parents, and the Child. The primary issue to be addressed was whether the existing order, under which each party has equal time sharing with the child, Should be modified, and if so, how much and why.[44]

After the evaluation was finished, a report detailing its results was written on October 22, 2013, and a copy of the report was provided to the attorneys representing each of the parents, and a copy was provided to the court. The parents were not permitted to possess a copy of the report,[45] and on December 12, 2013, after the custody dispute was resolved, the report was entered on the civil docket of the case under "Order of Confidentiality of Court document".[46]

However Trader, without his attorneys knowledge had taken a photo of each of the report's 37 pages for his personal records, and stored them on his laptop computer. That laptop was seized by Homeland Security agents on June 1, 2017, pursuant to a search warrant.[47] Notably, that search warrant only gave agents permission to search for evidence of visual depictions involving the sexual exploitation of minors.[48] Trader is not aware of another search warrant giving agents permission to search for documents related to Trader's: family court proceedings, mental or medical health, or anything else that the "parenting plan evaluation" report may be interpreted as.[49] Trader is also not aware of what evidence of crimes the government would be searching documents such as the "Parenting plan evaluation" report for. In other words, the photographs of the report are not visual depictions of the sexual exploitation of minors. The government legally should not have been allowed to search for, and possess this report. Which means, the government should not have been allowed to present this report at sentencing, and to repeatedly use this report against Trader to show his recidivism.

To be Sure, Agents did not request permission from Trader, nor did Trader give agents permission at any time, to read, use, have, or possess any kind of medical or mental health record, such as this report. Likewise, agents did not request permission from the court to unseal this document, which is still sealed as of this writing. Moreover, the government admitted at sentencing they obtained the report from Trader's laptop computer.[50] And they introduced the photographs of the report, not the report itself.[51] There is no question the government knew the nature of this report was highly confidential. It is listed as such on the first two pages, and the government clearly read the report.

During sentencing, Trader repeatedly told counsel to object to the introduction of this report based on these grounds. But counsel, for some unexplainable reason, objected only to the relevance of the report, and nothing else.[52] Even Trader was able to notice the government was using this report to show recidivism, so it is no surprise that particular objection failed. Throughout the entire proceeding, Trader told counsel to object to the introduction of this report, and he did not.

Counsel's failure to object to the introduction of, or move for the exclusion of, the "Parenting plan evaluation" based on any of the previously mentioned grounds, prejudiced Trader because the government used this report over and over again throughout the almost two hour long proceeding, to rebut Trader's argument that 28 years would be an appropriate sentence.[53] The government used this report during their presentation of evidence with H.S.I. agent Brian Ray.[54] They used it during cross-examination of

Trader's expert witness; Dr. Michael P. Brannon, Psy.D, psychologist,[55] and the government used this report during their closing argument.[56]

The government continuously used this report to show the court that nothing but LIFE would be sufficient for Trader because of his recidivism. And judge MiddleBrooks agreed. Specifically, Judge MiddleBrooks cited this report as a factor in determining Trader's sentence: "I have no confidence that he will stop this behavior because he continued it while on bond from a state court proceeding and even while he was being evaluated by medical professionals who he was, apparently, able to fool into believing he didn't present a threat to his children at the same time he was committing crimes against those children."[57]

Judge MiddleBrooks goes on to say that he "considered and [ ] take[s] seriously Mr. Peacock's arguments about the possibility that age may provide protection, but [ ] given the history in this case, I'm not convinced of that." Id.

Had counsel objected to the introduction of this report, based on the fact that it was obtained illegally, and without consent or, permission from the court, Trader's sentence would have been different. He would have been sentenced to a term of imprisonment of around 30 years, as requested, and would have had the chance to get out of prison, at around the age of 60 years old. The Supreme court has said "any amount of actual jail time has Sixth amendment significance". Glover v. United States, 531 U.S. 198, 203, 121 S.Ct. 696 (2001); See also: Lafler v. Cooper, 132 S.Ct. 1376 (2012). The Sixth amendment significance in Trader's case is enormous,

because his Sentence is LIFE, and not a term of years. He will never have the opportunity to get out of prison, and this would have been different had the government not been allowed to introduce that report, which was the deciding factor of Trader's Sentence.

At the very minimum, an objection to the report's introduction that was overruled, would have required the court to discuss how this document was obtained, and if the government had the court's permission or the party's consent. This would have preserved the issue for proper appellate review. Counsel was told to do this throughout the proceeding, had every opportunity to do it, but failed to do so.

Therefore, counsel rendered ineffective assistance at sentencing when he failed to object to the governments introduction of the "Parenting Plan Evaluation" report, which the government obtained illegally, and without consent, from Trader's electronic device. Had counsel objected to the admissibility of this confidential, protected report, there is, at the very least, a reasonable probability that the result of the proceeding would have been different. Trader's Sentence would have been a term of years, and not LIFE, but for counsel's deficient performance.

VII. Trader's plea of guilty to all counts of the indictment was made unknowingly and involuntarily, and counsel rendered ineffective assistance when he failed to raise issues of merit to the District court, and led Trader to believe he could appeal them.

Specifically when Trader pled guilty and signed his conditional plea agreement,[58] he believed part of his preserved issue II, was a challenge to the facts within the affidavit for the search warrant.[59] Trader was made to believe by counsel, that his rights on appeal would include the ability to request a franks hearing due to the numerous falsehoods and omissions within the affidavit to search. Trader had repeatedly requested counsel file a motion for a franks hearing pre-trial, claiming without these intentional falsehoods, the affidavit would lack probable cause. Counsel had assured Trader that, because the search warrant affidavit was challenged in a motion to suppress (on other grounds), and he pled guilty conditionally, he had preserved the right on appeal to challenge the misleading falsehoods within the affidavit.[60] Counsel clearly mislead Trader, and had Trader known these rights were not preserved, he would have elected to go to trial rather than plead guilty conditionally.

Specifically, Trader contends that the issuing Magistrate Judge was misled by material facts within the affidavit which were not true or accurate, such as: The searched residence was the residence of Scott Trader; that Scott Trader listed his mailing address with DHSMV as the searched residence on August 1, 2016;[61] that the searched residence was purchased by Scott Trader's mother and step father on June 16, 2016 according to the St. Lucie County property appraiser's website[62]; and that Scott Trader did not "update" his residential address to the searched residence from 4286 S.W. Carl St, Port St. Lucie, FL 34953.

The Magistrate Judge was misled as to what illegal activity occurred, and what application the activity occured on, and when. There were key omissions as to the voluminous data "Smartphone Application #2" responded with. This includes almost 600 "logons" from 42 different IP addresses.[63] The affidavit failed to mention the minor "Scott" was communicating with mis-represented her age on her profile for Smartphone application #1, or that Smartphone application #1 was for adults 18 and over. Moreover, the affidavit fails to mention that the minor messaged "Scott" first, and it does not mention how agents determined the video "Scott" sent to the minor was child pornography. This is important because the search warrant was issued to search for evidence of distribution of child pornography. 18 U.S.C. 2252 (a)(2).[64]

The affidavit also mis-represented Trader's criminal history involving crimes against children, specifically that Trader

was convicted for felony child neglect.[65] All of these mis-representations, omissions, and more, taken together, would render the affidavit without probable cause, as it would lack a nexis element.

Counsel knew how strongly Trader felt about this issue but refused to request a Franks hearing.[66] Trader also told counsel that he "would not sign any plea agreement" until counsel at least trys to address this issue. At the plea hearing, the government introduced for the first time, a "stipulation of facts"[67] which included many of the "facts" from the affidavit in support of the search, which again Trader insists are not true. Because of this, a short recess took place[68] in which Mr. Trader expressed his dissatisfaction with the same "facts" being listed within the stipulation, and sought to have it corrected. After a minor change by the government, Mr. Trader's counsel assured him that the truth was "listed within the motion to suppress" in the "statement of facts" and "because its all in there, the issue is preserved for appeal".

Unfortunately, the issue was not raised pretrial as Trader was led to believe, and not preserved for appeal as his counsel had told him. Moreover, because the exchange between Trader and his attorney took place during a period of recess, the conversation is not on the record. Trader is aware of the law now, but at the time he was simply listening to counsel. Trader had counsel who

he believed was informed, and who he believed he could rely on. When Trader entered into his conditional plea, he reasonably believed he would be able to raise that particular issue on appeal.

Where a defendant enters a guilty plea upon the advice of counsel, "the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Hill, 474 U.S. at 56. Prejudice is shown if "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." Id., at 59. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Trader pled guilty conditionally, preserving his right to appeal the issue of "whether the search warrant in this case was supported by probable cause." To the average person who does not know criminal law, that condition can be misleading to someone who believes their were inaccuracy's and omissions within the affidavit, which led to a finding of probable cause. It was counsels job to make sure Trader understood what he was preserving for appeal, and what he wasn't. Instead, counsel at the change of plea hearing lied to Trader for a reason which can only be assumed as getting the case resolved quickly. Had counsel informed Trader of the rights he was giving up, specifically the right to challenge the "facts" within the affidavit, that the issue was not preserved for appeal or even properly raised pre-trial, Trader would not have

Signed the plea agreement, and instead would have proceeded to trial.[69]

Prejudice can also be established because the result of the proceeding would have been different. Trader contends that if a Franks hearing would have been held, the affidavit would lack probable cause. However, at the very least, the correct information would be on record for the appellate court to consider when they were deciding Trader's appellate issue #2, whether the search warrant failed to establish a link between the residence to be searched and the criminal activity perceived. Specifically, the affidavit reads that Trader listed his mailing address with DHSMV as the searched residence. This is simply not true. The appellate court considered this when linking the residence to Trader.[70] Had this been disproven, the outcome of Traders actual preserved issue would have been different. The court would have found the affidavit lacked probable cause, and would have reversed Traders conviction.

Trader when signing his plea agreement, believed this was the most likely outcome, because counsel led him to believe it could actually happen. Had Trader known this outcome was not possible, he would not have signed the plea agreement, and would have instead proceeded to trial. Therefore, Trader did not knowingly and voluntarily enter his plea of guilty, because when he did, he did not understand the possible consequences of his plea.[71]

VIII. Trader's Plea of guilty was not made intelligently, and therefore was made unknowingly and involuntarily. He did not possess the correct mental state of mind on September 29, 2017 to make such a decision.

On September 28, 2017, mere hours before the change of plea hearing, Trader experienced a traumatic event in State Court when the Department of Children and Families terminated his parental rights over his two minor children.[72] In addition, in the time between the two court hearings, Trader was held in the Special housing unit where he attempted suicide in his cell.[73] Counsel was made fully aware of all events leading to the change of plea hearing, by Trader, and continued to encourage him to plead guilty by informing him that it would be in his best interest to plead early, the hearing was already scheduled, and the court frowns upon wasting their time.[74]

But if counsel would have rescheduled the change of plea hearing to a later time when Trader was not numb to everything happening around him, Trader would have realized the issues now being raised in at least four grounds of this memorandum.[75] Moreover, he would have fully considered the impacts a guilty plea would have on both his federal and state criminal cases.[76] Because of these reasons, and other's, Trader's plea of guilty was not made intelligently, and therefore was unknowing

and involuntarily made. Counsel was ineffective for continuing to encourage his client to plead guilty after being informed of his Clients State of mind leading up to the plea. Counsel was further ineffective for failing to reschedule the hearing which, had that been done, Trader would have had the correct state of mind, would not have pled guilty, and would have proceeded to trial.

Deficient performance by counsel is cause for procedural default. Strickland, 466 U.S. at 687. Counsel's performance is deficient where it falls below an objective standard of reasonableness. Id. at 688. The deficient performance of counsel must also have prejudiced the defendant's case. To satisfy prejudice, a defendant must show that, but for counsel's error's, there is a reasonable probability the result of the proceeding would have been different. Strickland, 466 U.S. at 693. If a defendant pleads guilty, prejudiced is shown if "there is a reasonable probability that, but for counsel's error's, the defendant would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. 52, 59 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Additionally, the prejudicial effect of counsel's errors must be considered cumulatively rather than individually. Williams v. Taylor, 529 U.S. 362, 120 S.ct. 1495, 1515 (2000)

Trader suffered actual prejudice where, as a result of counsel's failures, he never accurately understood the consequences of his plea. Namely, Trader was not aware at the time he pled guilty of the issues previously mentioned in grounds I, II, II, VII of the motion to vacate sentence. By pleading guilty, Trader forfeited his right to trial without a proper understanding of the direct consequences of accepting criminal responsibility, because Trader did not have the mental capacity to understand those consequences. Therefore, Trader asserts that he has shown cause and prejudice to excuse procedural default.

## Footnotes

1. Trader's indictment (DKT 7:1) and his stipulation of facts and offense elements (DKT 22: 5-6), charge him with a completed act only, and not an attempt.

2. See: United States v. Paulsen, 591 Fed. Appx. 910, 913 (11th Cir. 2015); United States v. Dominguez, 997 F.3d 1121, 1124 (11th Cir. 2021)

3. See: United States v. Taylor, 640 F.3d 255, 257 (7th Cir. 2011)

4. See: Dominguez, 997 F. 3d, 1121, 1125 (11th Cir. 2021)

5. See: United States v. Isabella, 918 F.3d 816, 830-836, 845-849 (10th Cir. 2019) (collecting cases); See also: United States v. Lee, 603 F.3d 904, 913 (11th Cir. 2010)

6. See: Reynolds v. United States, 2018 U.S. Dist. Lexis 40078 (S.D. Illinois, March 12, 2018) "Congress did not define the term 'Sexual activity' as it is used in 2422(b) other than to say that it 'includes the production of child pornography.' 18 U.S.C. 2427" Id. at 2018 U.S. Dist Lexis 17.; See also: Taylor, 640 F.3d at 259 (7th Cir. 2011) "The government acknowledges that 'Sexual activity for which any person can be charged with a criminal offense' is explicitly defined to include producing child pornography. 18 U.S.C. 2427." See also; U.S. v. Owens, 2022 U.S. Dist Lexis 130016 (S.D. W.V., July 21, 2022) at Lexis 3-6

7. Courts have held (though more often just assumed), that the underlying criminal offense to which the Statute refers could be a State or federal crime, although the Statute does not say so. See: United States v. Shill, 740 F.3d 1347, 1351-52 (9th cir. 2014) "The phrase [criminal offense] is not defined in the federal criminal code."; But See: United States v. Jockisch, 857 F.3d 1122, 1124 (11th cir. 2017) (18 U.S.C. 2422(b) prohibits "sexual activity that ... could have resulted in criminal charges under State or federal law.")

Trader's case is a prime example of why this is unconstitutional. The production of child pornography Statute in the State of Florida is extremely broad and includes conduct not covered within the definition of Sexual activity for a violation of 2422(b). "For a federal Statute to fix the Sentence for a broad category of conduct criminalized by State law, Such as 'any Sexual activity for which any person can be charged with a criminal offense' is a questionable practice. Congress cannot know in advance what conduct the State will decide to make criminal". Taylor, 640 F.3d 255, 256 (7th cir. 2011) In United States v. Rogers, 2019 U.S. Dist Lexis 97571 (D. Kansas June 11, 2019), the court acknowledged "no defendant has ever challenged this issue before. Moreover, when courts have interpreted this Statute in the context of a constitutional challenge, they have held, and Sometimes Simply assumed, that State law offenses are incorporated." Id. 2019 U.S. Dist lexis 6-7

As an alternative argument, for the reasons set forth within, Trader contends this Statute, 2422(b), is unconstitutional as applied to him.

8. To be clear, 18 U.S.C. 2422(b) only requires that an underlying criminal offense be chargeable. The statute does not require a defendant actually be charged with the underlying criminal offense, unlike the RICO statute, which does. See: 18 U.S.C. 1959(a). Likewise, the statute does not require a conviction, or in the context of an attempt, that a conviction of the underlying criminal offense even be a possibility. See: Jockisch, 857 F.3d 1122, 1128 (11th Cir. 2017) "2422(b) does not require that the defendant commit any prior crime at all nor that the defendant actually engage in any unlawful sexual activity" (collecting cases) "there is no requirement that a defendant attempt to violate a statute. Section 2422(b) only requires that a defendant attempt to entice a minor to engage in an act that would be illegal." Id. at 1129 n.8 "2422(b) does not require that a defendant actually violate the listed state statute." Id. at 1133

In essence, 2422(b) lowers the standard of guilt for a conviction based off the conduct of the underlying criminal offense, from beyond a reasonable doubt, to probable cause, and only probable cause is needed to allege a violation of any criminal statute which then forms the basis of the 2422(b) violation. See: United States v. Mannava, 565 F.3d 412, 416 (7th Cir. 2009) "read literally, [Section 2422(b)] would make it a federal offense to engage in conduct that created only probable cause to think that one had committed a criminal offense, since probable cause is all that is required to charge someone with an offense."; See also: United States v. Saldaña-Rivera, 914 F.3d 721, 726 (1st Cir. 2019) "One might literally read [Section 2422(b)] language as including suspicious but nevertheless lawful conduct that might furnish probable cause

for an indictment."

In the instant case, Trader is charged with a successful act, the enticement of a minor to engage in sexual activity, i.e. the production of child pornography. Based on the conversation Trader had with MV1, one would believe there would be probable cause for an arrest, charging him with production of child pornography. However, as explained within, there is at least reasonable doubt Trader did not play a role in the production of the only child pornography relied upon for this charge. Trader contends this statute is unconstitutional as applied to him, as it violates his Due Process rights guaranteed by the 5th, 6th, and 14th amendments to the United States Constitution.

9. See: (DKT 22 : 5-6); (DKT 52 : pg 20/21-25, pg 21/1-25)

10. 18 U.S.C. 2427

11. See: (DKT 22 : 5-6); (DKT 52 : pgs 20 - 22)

12. See: (DKT 22 : 2); (DKT 52 : pg 14/17-25, pg 15/1-7)

13. See: Newman v. United States, 2018 U.S. Dist Lexis 208357 (W.D. Kentucky, Dec 11, 2018) In Newman, just as in the instant case, the defendant was charged with a violation of 2422(b), with an underlying offense of production of child pornography. The court in Newman found an evidentiary hearing was required because the factual basis did not contain evidence that the defendant enticed the minor victim to engage in "sexual activity" within the meaning of the statute.

14. United States v. Kushmaul, 984 F.3d 1359, 1364-65 (11th Cir. 2021)

15. Trader's change of plea hearing was held on Sept. 29, 2017. See: DKT 52

16. See: Taylor, 640 F.3d 255, 258 (7th Cir. 2011); See also: Dominguez, 997 F.3d 1121, 1124-25 (11th Cir. 2021)

17. See: Dominguez, 997 F.3d at 1123-25 (11th Cir. 2021)

18. See: Jockisch, 857 F.3d 1122, 1133 n.13 (11th Cir. 2017) (May 26, 2017)

19. See: Section II, n.7

20. To this point, a recent tenth Circuit case is a good example. In United States v. Isabella, 918 F.3d 816 (10th Cir. 2019), the defendant was charged with 2422(b) for both attempted and completed acts. Id., at 824 n.2. The government relied on an underlying federal offense of production of child pornography. Id., at 830. Because the defendant did not play a role in the production, as the only child pornography charged in the count pre-dated the defendant's conversations with the minor, he could only be found guilty of attempted production. Id., at 814 n.2, 836. See also: United States v. Isabella, 2021 U.S. Dist Lexis 221663, at 10-11 (Dist. Colo, Nov. 17, 2021).

The distinguishment between Isabella and Trader is, Isabella was charged with both attempted and completed acts. Trader was only charged with, and convicted of, a completed act.

21. See: 18 U.S.C. 2422(b); 18 U.S.C. 2427; FLA Stat. 827.071(3); FLA Stat. 827.071(5).

22. Trader Auer's counsel was told during a phone call after the initial brief was filed, about the issues regarding his 2422(b) conviction. Counsel was further informed through correspondence and told to raise this issue on direct appeal. Additionally, counsel's wife Lydia Pittaway, who was representing Trader in his criminal case against the State of Florida, was also made aware of the issues surrounding his 2422(b) conviction. See: Exhibits E, F

23. See: (DKT 21)

24. See: Appellant's brief, 9/10/2018

25. See: Pro se motions dated 9/26/2018, 10/16/2018, 10/23/2018, 1/18/2019, 1/22/2019, 4/1/2019

26. Specifically Trader's pro se motions dated 1/18/2019, and 1/22/2019

27. See: response of counsel dated 10/4/2018, 2/1/2019

28. See: Government's brief, 1/10/2019

29. See: Motion for extension of time, 1/17/2019 - pg 1/N.4

30. See: Pro se motions 1/18/2019 - pg 8/N.18, CDS pg 9/N.18; 1/22/2019 - pg 8/N.18, CDS pg 11/N.18

31. See: Order's dated 12/19/2018, 4/4/2019

32. Appellant's Reply brief, 3/4/2019

33. See: Appellant's brief, 9/10/2018 - pgs 17-18

34. See: Appellants Reply brief, 3/4/2019 - pgs 1-6

35. The court also reached this conclusion based in part on the lack of information about the location data provided by KiK to Homeland Security. Because counsel did not attach the records of this data to the motion to Suppress, they never became part of the record on review, and the appellate court was never able to view them. Counsel was wholly ineffective for not providing the District court with the information which was not just the basis for the motion to Suppress, but was the defendants whole argument on appeal.

Counsel later incorrectly informed Trader that the appellate court would have access to review these records through discovery. This incorrect information influenced Trader's decision to plead guilty conditionally. And because the court at oral argument questioned where the information contained within the briefs came from, counsel could not point to anywhere within the record to back the tracking claims made by Trader. See: Exhibit Oral argument, 11/19/2020 - pg 9/5-25, pg 10/1-24, pg 22/20-23

Had counsel provided the tracking data to the District Court with the motion to Suppress, the Appellate court would have reviewed it, and the result of the proceeding would have been different. The court would have been able to view the tracking of Trader's physical movements,

and would have held it violated his right to privacy guaranteed by the fourth amendment. Likewise, Trader would not have pled guilty conditionally had counsel correctly informed him that this data would not be part of the record on appeal. Trader's entire strategy on appeal was based around this data. It strains credulity to believe he would have signed the plea agreement otherwise.

Therefore counsel was ineffective for not expanding the record in the district court with the necessary information needed to prevail on direct appeal, while at the same time knowing the strategy developed with his client. Had counsel not provided incorrect information to Trader before signing his plea agreement, he would not have plead guilty and instead would have proceeded to trial.

36. See: Appellant's Reply brief, 3/4/2019 - pgs 6-8

37. Trader submits to the court as Evidence letter's he has sent to counsel over the years, re-affirming his position that counsel knew the strategy of Trader's case all throughout the criminal process. Exhibit E

38. See: Pro Se motions, 1/18/2019 - CDS pgs 6-7/N.11, Pg 8/N.16
See also: pro se motion, 1/22/2019 - CDS pgs 8-9/N.11, pg 10/N.16

39. See: Santobello v. New York, 404 U.S. 257, 262; 92 S.Ct. 495, 499 (1971)

40. See: Exhibit O, Parenting Plan Evaluation Report

41. See: Fla Stat. 61.20; Rule 12.363 of Florida Family Law Rules of Procedure. See also: Exhibit O, Cover Sheet - pg 1

42. Health information is defined under HIPAA as information that is created by a health authority that relates to the past, present, or future mental health condition of an individual. 42 U.S.C. 1320(d)(4)

43. Until Sentencing, Trader still had properity rights and ownership over his seized electronics. See: DKT pgs 93-94; See also: Fed R of Crim P 32.2(b)(4)(A)

44. See: Exhibit O, pg 1

45. See: Exhibit O, Cover Sheet

46. See: Exhibit T, State of Florida civil docket Sheet

47. See: DKT 14-1

48. See: DKT 14-1, CDS pgs 14-17

49. In pleading guilty, Trader was not contesting ownership of the seized electronics. Additionally, medical/mental health records are protected by all related acts enacted prior to, and after, the enactment of HIPAA. See: Florida v. U.S. HHS, 648 F.3d 1235, 1334-35 (11th cir. 2011)

They are not ordinary documents such as banking records. Moreover, this is a sealed document within the court of the State of Florida. And to permit such a document to be seized pursuant to this search warrant, would be to permit a general search, which the fourth Amendment prohibits.

50. See: DKT 56, pgs 36-37

51. See: DKT 56, pg 36/23-25

52. See: DKT 56, pg37/5-11

53. See: DKT 56, pgs 36-38, pgs 42-43, pg 55, pgs 79-80, pgs 91-92

54. See: DKT 56, pgs 36-38

55. See: DKT 56, pgs 55-56

56. See: DKT 56, pgs 79-80

57. See: DKT 56, pgs 91-92

58. See: DKT 21

59. See: DKT 14-1

FootNotes

60. See: Exhibit E, letters dated 11/29/18, pg 4; 3/25/19, pg 3

61. See: Exhibit U, Trader's Drivers license

62. See: Exhibit P, St. Lucie County property appraiser identification card.

63. At the oral argument in Traders appeal, the court pointed at that this information is no where on the record, which would also include the affidavit to Search. See: Exhibit J, pg 9-10, 13-14

64. See: DKT 14-1, CDS pgs 1,7,11

65. See: Exhibit V, Trader's Rap Sheet, pg 12

66. See: Exhibit W, Traders pre-Trial notes, pgs

67. See: DKT 22, CDS pgs 2-3

68. See: DKT 52, pgs 24-27

69. In United States v. Pierce, 120 F. 3d 1153 (11th Cir. 1997), a case the government cited at the plea hearing, the court addressed the question of if a conditional plea is truly conditional, without that condition having been written into the agreement, or having the governments consent. The court held that "because pierce entered -- and the district court accepted -- this guilty plea only on the reasonable (but mistaken) belief that pierce had preserved the [ ] issues for appeal, his plea was, as a matter of law, not knowing and voluntary." Pierce, at 1156-57.

The District Court during Trader's change of plea, while acknowledging one of Trader's conditional issues was "whether the search warrant in this case was supported by probable cause", did not explain what analysis would be used to find probable cause. Again, Trader was under the impression he could challenge "facts" within the affidavit. The government added to Trader's confusion when they didn't go any further in explaining that "the second issue was whether there is probable cause in the search warrant." DKT 52, pgs 35-38. Mistruths and omissions within the affidavit have a direct bearing on "whether there is probable cause in the search warrant."

70. See: United States v. Trader, 981 F.3d 961, 969-970 (11th Cir. 2020)

71. "Three core concerns underlie rule 11: (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature

of the charges; and (3) the defendant must know and under-stand the consequences of his guilty plea. If one of the core concerns is not satisfied, then the plea is invalid." Pierre, at 1156.

"An involuntary plea may result where the accused does not understand the nature of the constitutional protections he is waiving. It is equally clear that the defendant was not aware that his guilty plea waived his right to assert a constitutional challenge on appeal . . . As a consequence, [the defendants] guilty plea does not satisfy one of the core concerns of rule 11: at the time of his guilty plea, he could not have understood its consequences." Pierre, at 1157.

"If a defendants guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void." McCarthy v. United States, 394 U.S. 459, 465-67 (1969)

Trader was told, and believed, his preserved appellate review of his motion to suppress included an additional review of an issue that, as it turned out, was never raised within that motion. Counsel's ineffectiveness caused that. But neither the government, nor the district court, explained to Trader anything else which would lead him to believe otherwise. This could only be defined as not knowing the consequences of his plea.

72. See: Exhibit R, pg 2; Exhibit S, pg 2

72. See: Exhibit R, Pg 2; Exhibit S, Pg 2

73. See: Exhibit U, Pgs 7-9

74. During the week of Trader's plea hearing, multiple events occurred involving Trader's federal criminal case, State criminal case, and State civil action with DCF's petition to remove Trader's rights over his children. Monday, September 25, 2017, Trader had a court appearence in his DCF action. A trial was prepared to happen on that day to terminate his parental rights. His attorney, Christopher A. Hicks, Esq., had informed his client the easy and best way to handle this action would be to voluntarilly sign over his rights to his children. He informed Trader the likely-hood of having his children removed was almost certain, that the standard being applied would be clear and convincing evidence, which is lower then reasonable doubt, and anything said or done in this civil action could be used against him in either of his criminal cases. Trader attempted to sign his rights away but could not put the pen to the paper. The thought of it became so overwhelming to Trader he got physically sick and complained to the judge in an emotional outburst that his due process rights were being violated by having his parental rights removed without first being convicted of a crime. Trader was escorted out of the courtroom, and Trial was rescheduled for Thursday, September 28, 2017. When Trader got back to the county jail, an altercation happened between him and a deputy sheriff, and Trader went to the SHU.

71. On Tuesday, September 26, 2017, Trader's federal Public Defender, R. Fletcher Peacock, and Trader's private attorney representing his State criminal case, Lydia Pittaway, came to see Trader at the same time, for multiple reasons. First, his federal public defender Mr. Peacock wanted to inform Trader that the order denying his motion to suppress evidence was filed the day before on 9/25. He also had a plea agreement for Trader to sign. Ms Pittaway wanted to inform him that if he chose to sign the federal plea agreement, there was a verbal agreement reached with the State of Florida for a term of 25 years to run concurrent with the federal sentence, if he were to choose to accept it.

They both had also spoke with Mr. Hicks about Trader's emotional outburst the previous day in court and wanted to make sure that would not happen again in any of the legal proceedings going further, but especially in the State DCF proceeding on thursday, and the federal change of plea hearing on Friday. Then Trader and his two criminal attorneys proceeded to practice the plea colloquy, and was told not to ask the court questions, if he had questions, ask his attorneys. Trader asked if the change of plea could be rescheduled because of the State civil action the day before, and was told no. Trader then signed the plea agreement.

On Wednesday, September 27, 2017, Christopher A. Hicks came to see Trader to prepare for the court hearing on thursday. He again went over the reasons why it would be better for everyone if he voluntarily signed away his rights. Trader agreed to do it. Later that night, Trader twice attempted to hang himself. The rope broke, and he cried himself to sleep.

74. On Thursday, September 28, 2017, after openly weeping in the court room, the judge closed the court room to everyone but the attorneys, Trader, and Traders mother. Then Trader signed away the rights to his children. when he got back to the jail he tried to hang himself again, and again he failed. He never went to sleep. Friday, September 29, 2017, after arriving at federal court house and entering the court room, Trader once again asked his attorney if the hearing can be rescheduled because of the events that had taken place the previous day. Trader explained to his attorney that his kids are gone, he hadn't slept, and he tried multiple times to take his life. But counsel explained to Trader that it is in his best interest to plea guilty early to receive the 3 point reduction, I have already been transported to the court house, the hearing is already scheduled, and the court frowns upon wasting their time. He told Trader to stop acting like a baby and take responsibility for his actions. And so Trader did.

75. Trader would have had the mental capacity to understand what was happening in his criminal case, would have questioned, and corrected both grounds raised in Section II of this memorandum; Note 35 of Section II of this memorandum; and the ground raised in Section III of this memorandum.

76. See: Exhibit Z, Supplemental Discovery in State criminal case.

## CONCLUSION

For all the foregoing reasons, and for reasons not yet included within this memorandum, Trader requests that this court conduct an evidentiary hearing on his Section 2255 motion and thereafter grant all relief to which he may be entitled.

I declare under penalty of perjury, pursuant to 28 U.S.C. 1746, that the foregoing is true and correct.

Executed on this 27 day of September, 2022.

Respectfully Submitted

/s/ Scott Trader

Scott Trader
Reg No. 16118-104
F.C.C. Coleman
U.S.P. Coleman II
P.O. Box 1034
Coleman, FL 33521