Table of Contents :

A) Issues presented for Review                    Page 1

B) The government violated Mr. Traders
Expectation of Privacy in his physical
Movements when it requested 30 Days
of Location information without a warrant.   Page 2 - 9

C) Mr. Trader had a reasonable Expectation
of Privacy in his historical IP
Addresses, despite them being
held by a third Party, because
Location information is A
Distinct Category of information.          Page 10 - 17

D) Mr. Trader's case is distinguishable
from all cases Prior to Carpenter
which have dealt with the question
of Fourth Amendment Protection
as it relates to An IP address.      Page 18 - 23

E) The Stored Communications Act
is not Applicable or Relevant because

The Emergency Disclosure Requests
Sent to Kik and Comcast Were, on
Their Face, Reckless and a total
Disregard for the truth.                    Page 24 - 35

F) The good faith Exception
to the exclusionary Rule Does
not Apply in this case.                    Page 36 - 42

G) If this court holds that the government
Violated Mr. Tinders Fourth Amendment
Rights when it obtained his historical
IP addresses without a warrant,
All fruits of the unlawful search
Should be Suppressed.                    Page 43

Footnotes                    Page 44 - 46

A)             Issues Presented for Review

1) Did the district court Err when it denied Mr. Trader's Motion to Suppress and approved the governments warrantless Seizure and Search of his IP address history and account Information? Did Mr. Trader have a reasonable expectation of Privacy in his physical movements and Location Information? Are the privacy concerns heightened by the fact that the government tracked Social Media activity, Chronicling each time a message was Sent or recieved on Mr. Traders Cell phone, for 30 Days, without a Judicial order, administrative Subpoena, or a Showing of Probable cause?

2) Did Mr. Trader have a reasonable expectation of Privacy IN Voluminous location records generated by use of his Cell phone and held by a third party, when those Records are a Distinct Catagory of Information?

3) Did Exigent Circumstances exist to Support the Search of Mr. Trader's Historical IP Addresses?

4) Did the district court Err when it denied Mr. Trader's Motion to Suppress without holding an Evidentiary hearing?

5) Should all "Fruits" of the unlawful Search be Suppressed?

B) The Government Violated Mr. Trader's expectation of Privacy in his physical movements when it Requested 30 Days of Location Information without a warrant.

When Homeland Security Sent an Emergency Disclosure Request to KiK, compelling them to produce and Disclose All "Recent IP Addresses used by the account holder" In Addition to the basic Subscriber Information Such as "The last Known Customer Name and E-Mail Address", The government Violated Mr. Trader's fourth Amendment rights against an unreasonable Search and Seizure. This warrantless Seizure and Search resulted in the government obtaining over 30 Days of Locational Information. Here, the government exercised unfettered discretion when it requested an unlimited amount of IP Address and Account Activity history without Probable cause. KiK disclosed not just basic Subscriber Information, But also 26 pages of IP addresses, Remote Ports which were accessed, the connection type used, The Transactional Chat log time stamp, and the corresponding date and time that each Message was Sent and Recieved on the application. This Information totals 593 different location Points over 30 Days, the time and Date Mr. Trader was at each location, and the Make, Model, and Operating System of the device used, along with device Specific Identifing Information. ① (DE KiK Disclosure)

The Supreme court in carpenter agreed that Mapping the past Movements of a Cell phones location over 7 Days "Provides an all-encompassing record of the holder's whereabouts. As with GPS information, the time-Stamped data provides an intimate window into a person's life, revealing not only his Particular Movements, but through them his Familial, political, professional, religious, and Sexual associations". Id at 2217 Here, The government was essentially given Data that was equally as intrusive as the C.S.L.I. at issue in carpenter. Because of the location information given to Homeland Security, the agents here were not only able to identify and locate Mr. Trader, but also were able to look through that "Intimate window" to See Where Mr. Trader Spent most of his time, his home. Since 413 of the 593 location points were from the Same IP Address, and connected through wifi, the government was able to place the device, and by default, the owner of the device the k.k account was on, at the physical location the IP address was registered to. Because wifi access is password restricted, and the password for that Particular account needs to be ~~entered~~ entered on the Device at least one time before connecting to it, the government was able to Conclude the device the k.k account was on, and by Proxy its owner, was not only at that residence, but knew the Password to the wifi, and therefore established a Solid Connection with the residence. ②

Moreover, because Agents had Mr. Trader's location Information, the government was able to pin point Exactly where Mr. Trader <u>would be in the Future, and when he would be there</u>. A Mapping of the account activity for Mr. Trader's Kik account reveals that through the overnight hours, Everynight From May 1st 2017 through May 31st 2017, the device that held the Kik application, Mr. Trader's Cell phone, was at only one location whenever a text message was Sent or recieved. This "Intimate window into [Mr. Trader's] life" revealed where he was 30 Consecutive Nights, During a time when Most americans would be asleep, In their beds, at their home. Coincidently, the Search Of Mr. Traders Residence occurred the Very next night the location records ended, the Morning of June 1st 201: and at the very same time his records indicated he would have been there, at 1:10 am. Indeed, Agents Never physically observed Mr. Trader at the residence, because they did not need to. They had already had him under <sup>round the clock</sup> Surveillance for 30 Days prior to the Search "The Retrospective quality of the data here gives police access to a category of information otherwise unknowable. In the past, attempts to reconstruct a person's Movements were limited by a dearth of records and the frailties of recollection. With access to [the location information here], the government can now travel back in time to retrace a person's whereabouts... Police need not even Know in advance whether they want to follow a particular individual, or when... whoever the Suspect turns out to be, he has effectively been tailed every Moment of every day... Without regard to the

constraints of the Fourth Amendment". Carpenter, 138 S. ct. at 2218

Additionally, the government was able to learn the habits and patterns of Mr. Trader through the release of his account data. At the very least, by mapping his location, the government is able to ~~deduce the daily routine~~ deduce the daily routine of Mr. Trader, from one day to the next. For example, without identifying any other locations besides Mr. Trader's home, the government is able to conclude not Just Wherever Mr. Trader Was within his home, but also his movements to and from his home, and the amount of time inbetween. This is done Simply by examining the Data. An IP address gives a user's exact location, and Since the government Knows the exact location of IP address 76.110.46.234 is Mr. Trader's home, Then "It is Simple Common Sense to think that if one Knows the location [of the ip address] from which a user is using the Kik app", then one Must also know that user's Movements to and from that location, and from one location to the next, using the Same Record of Historical IP addresses. (DE 14: 13-14) For example, out of 30 Days of location data the government possessed, the records Show that for 22 Days, During Normal business hours, The Particular IP addresses that correspond with ALL of the account activity within that Specific "Window", were not the IP address associated with Mr. Trader's home, and were not connected through Mr. Trader's home wifi connection.

There is however, a record of multiple location points, made through several different IP addresses, All connected through Mobile LTE and Mobile Hot Spot Data, throughout the 30 Days of records, for that very same "window." This Means that one could very easily establish a pattern that between those hours, on those days, Mr. Trader's cell phone was and would be located somewhere other than his home.

But that is not all. That is just some of the Information gathered by this chronicle of Mr. Trader's Past Movements. Consider a total of 593 location points, from 42 different IP addresses. 413 points show Mr. Trader at 1 IP address, his home. This Means there are 180 location points from 41 other IP addresses, Connecting over the Mobile LTE and Mobile Hot Spot networks. Put Simply, from May 1st 2017 through May 31st 2017, there were 41 other locations Mr. Trader was, and 180 times Mr. Trader was at those locations. All of those locations were somewhere other than his home when he sent or received a text message from his cell phone, on the Kik application. With the data generated from each message, the government possessed the means to get the exact location Mr. Trader's Phone was at those times. During the month of May 2017, some of those locations correspond to: Several Stops along Mr. Trader's Route while at work as a Pool technician, Trips Mr. Trader made to the county court house, Various trips to different Stores and restaurants with his family, family trips and Vacations to Orlando theme parks, And Multiple trips on public roadways

in a vehicle, among others.

The tracking of a persons past movements is exactly the issue considered in Carpenter, the only difference in Mr. Trader's case is, it is done in the form of an IP address instead of CSLI. Both partake many of the qualities of gps monitoring the Supreme court considered in Jones. "It is detailed, [Carpenter, 138 S.Ct. 2206, 2216] encyclopedic, and effortlessly compiled". Here the data is, Intimate, comprehensive, In-expensive, retrospective, and In-Voluntary. Both cases reached the Same conclusion, which should be applyed and extended here. Mr. Trader "has a reasonable expectation of privacy in the whole of his Physical Movements.". See: Carpenter, 138 S.Ct. 2206, Jones, 565 U.S. 400, [416 (30-431)], 132 S.Ct. 945, 956, 861, 181 L.Ed. 2d 911 (2012)

Furthermore, there is no question that people have an expectation of privacy in their home. Numerous times, the Supreme Court has been confronted With crucial questions regarding the application of the Fourth Amendment in ones home, and "have Said that the Fourth Amendment draws a firm line at the entrance to the house. That line, we think, must not only be firm, but also bright - Which requires Clear Specification of those methods of Surveillance that require a warrant". Kyllo, 533 U.S. at 40. "Searches and Seizures inside a home Without a warrant are presumptively unreasonable absent exigent Circumstances". Karo, 468 U.S. at 714-15 (collecting cases).

Inspection of 583 Historical IP addresses, Spanning 30 Days, invaded an even greater privacy interest than the Single day searches challenged in Karo and Kyllo because of the mere amount of information collected, since 413 of the location points occurred in Mr. Trader's home. Similar to the Searches challenged in Karo, Kyllo, and Carpenter, examination of those historical IP address location points allowed the government to place Mr. Trader and his cell phone at home at Specific points 413 Different times. "In the home, our cases show, all details are intimate details, because the entire area is held safe from prying government eyes". Kyllo, 533 U.S. at 37. "The Karo and Kyllo courts recognized the location of a person and his property within a home at a particular time as a 'Critical' private detail protected from the government's intrusive use of technology". U.S. v. Graham, 796 F. 3d 332 (4th Cir. 2015) at 346-47; See Kyllo, 533 U.S. at 37; Karo, 468 U.S. at 715.

There exists a minimal expectation that people have privacy in their home, and this expectation has been acknowledged to be reasonable. Kyllo, 533 U.S. at 34. "To withdraw protection of this minimum expectation would be to permit police technology to erode the privacy guaranteed by the fourth Amendment. We think that obtaining by [Location] technology any information regarding the interior of the home that could not otherwise have been obtained without physical Intrusion into a constitutionally protected area . . .

Constitutes a Search... at least where [as here] the technology in question is not in general public use. This assures preservation of that degree of privacy against government that existed when the fourth amendment was adopted".

Here, the violation of privacy is obvious, because the government used the historical IP addresses to locate Mr. Trader in his home on 413 occasions. When it requested disclosure to Kik, the government did not know the identity of the owner to the Kik account, or his location. Those historical IP addresses were critical information, because it led the government to Mr. Trader, and his home. The government used technology not available to the general public to essentially reach through Mr. Trader's Social Media account, into his home, a protected space, to identify and locate him. If nothing else, Mr. Trader's expectation of privacy in his historical IP addresses when home, and in his physical movements to and from his home, are subjective and reasonable.

C) Mr. Trader had a reasonable Expectation of Privacy in his Historical IP Addresses, despite them being held by a Third Party, Because Location Information is a Distinct Category of Information.

Information in the hands of a third Party is not categorically excluded from protection under the fourth amendment. See: Carpenter v. U.S., 138 S.ct. 2206 (2018); Ferguson v. City of Charleston, 121 S.ct. 1281, 1288 (2001); U.S. v. Jacobsen, 466 U.S. 109, 114 (1984); Stoner v. California, 376 U.S. 483, 487-88, 490 (1964). In determining which information is entitled to fourth Amendment protection, courts Shall administer a "Multifactor Analysis - considering intimacy, comprehensiveness, expense, retrospectivity, and voluntariness". See Carpenter, 138 S.ct at 2217 ~~████~~ (Kennedy, J., dissenting) Carpenter, 138 S.ct at 2217 - 2223

Smith and Miller are distinguishable from this case for multiple reasons. First, the retrospective nature of 593 location points over a period of 30 Days are Significantly More revealing than the limited three days of call records in Smith. In Smith, the defendant Physically dialed each number that appeared in the record the government obtained. As in Miller, the defendant physically wrote the information on the bank records obtained by the government. Here, the IP address history and account Data Collected by Kik are automatically generated without any active participation or submission by the user. These records

Contain Information that is comprehensive in terms of the physical
places the user was, and the time the user was at those physical locations,
Making the records here entirely different in quantity and quality
from the data generated by a simple landline phone, and possess many
more Intimate details about ones life. In Many cases, as here, this
information is gathered about a suspect before that person is even
Suspected of a crime, and at very little expense to the government
as opposed to what this type of information would have cost the
government in round the clock surveillance at the time Smith and Miller
were decided.

Simply put, the court should not rely on antiquated cases
to determine how to protect Historical IP addresses and related data,
especially when it reveals private, protected location information. See:
Carpenter, 138 S.ct 2206, 2219-20 (recognizing a right to privacy in
"Historical cell phone Records that provide a comprehensive chronicle of the
user's past movements") See: Riley, 134 S.ct at 2488-91
(Recognizing that cell phones Store "qualitatively different" data that
discloses revealing information as compared to physical Records of the Past).
See: Jones, 132 S.ct. 945 (2012) (recognizing a person's expectation of
Privacy in his physical location and movements.)

Second, Smith and Miller do not reflect the realities of
Modern Society and its intersection with technology. Today we share
Much more information about ourselves with third partys

Merely as a by-product of the differences in how we perform tasks: We e-mail instead of writing letters, we text instead of calling, we read books and newspapers online through our mobile device instead of on paper, etc. As Justice Sotomayor noted, Smith and Miller's basic "premise" is "ill-suited to the digital age, in which people reveal a great deal of information about themselves to third parties in the course of carrying out mundane tasks". Jones, 132 S.ct. at 957 (Sotomayor, J., concurring). Having in on Subjective expectations of privacy, Justice Sotomayor doubted "People would accept without complaint the warrantless disclosure" of information to the government from their ISP's like the URL's they visit or their e-mail addresses with which they correspond. It is this reasoning that led the court in Carpenter to conclude that "there is a world of difference between the limited types of personal information addressed in Smith and Miller and the exhaustive chronicle of location information casually collected by wireless carriers today". Carpenter, 138 S.ct at 2219

The Supreme court in Carpenter found five principle reasons for deciding that on individual has a reasonable expectation of privacy in cell phone location information, despite that information being in the hands of a third party. In doing so, the court First considered if the information at issue was "Truly shared... Voluntarily" or was it generated "by dint of its operation, without any affirmative act on the part of the user". Id. at 2220 Second, the court considered how "comprehensive" the

Category of information is, Including reason _Three_ , "The retrospective quality of the data" that would have been "Otherwise unknowable" because of the _fourth_ reason, the amount of "Intimate" Information collected, such as a "Chronicle of the user's past movements", "Provid[ing] an all-encompassing record of the holder's whereabouts" including, as here, when a "Cell phone faithfully follows its owner beyond public thoroughfares and into private residences, doctor's office's, political headquarter's, and other potentially revealing locales", at _Five_, "Practically no expense" to the government. The court noted that "Cell phone tracking is remarkably easy, cheap, and efficient compared to traditional investigative tools" and pointed out that "In the past, attempts to reconstruct a person's movements were limited by a dearth of records and the frailties of recollection", but with cell phone location information, "The government can now travel back in time to ~~ retrace a person's whereabouts". _Id._ at 2218

This court can and should apply the five principle reasons cited in carpenter, to this case, because as the government themselves admit, "The holding and ~~ rationale in [carpenter] is essentially the same as the issue here, but it involved Historical cell tower information from a phone company rather than Subscriber information from a smartphone application company". (DE 14:8) The government will attempt to now distinguish Historical cell tower Data from Subscriber Information, but there is an ample precedent of case's that call

14

CSLI, exactly that.

There is however, a gigantic difference between "basic" Subscriber Information, and the "distinct category of [Subscriber] Information" at issue here, and as was the case in Carpenter. While both are revealing, It is the Sheer Volume of the data the government recieved that caused the Fourth Amendment Violation. If the government had requested one Specific location, at one Specific point in time, or Simply asked for the last location point accessed, the Fourth Amendment Violation may not have occurred. That is the difference between "basic" and "Distinct" Subscriber information as the Supreme Court has now explained.

Applying Carpenter's "Multifactor analysis" In Mr. Trader's case, this court Should Find that : First, KiK generated a plethora of data everytime Mr. Trader Sent or recieved a text message, including Information which was not "truly Shared... Voluntarily", but information which was generated "by dint of its operation, without any affirmative act on the user", Such as the physical location Mr. Trader was, and the time he was there. Second, The court Should Find how "Comprehensive" this "Distinct category of information" IS, Including 26 pages of Location Information, detailing the historical IP addresses, The remote ports accessed, the connection type used, and the date and time of each message/connection, among other things. Third, "The retrospective quality of the data" is Enormous. This includes 30 Days worth of location information,

totaling 593 location points and 42 different IP addresses, Information that would have been "Otherwise unknowable" because of: <u>Four</u>, The amount of "Intimate" Information collected, Such as the Chronicle of [Mr. Trader's] Past movements" which "Provide an all encompassing record of [Mr. Trader's] whereabouts" Since his "Cell phone faithfully followed] its owner beyond Public thoroughfares and into Private residences, doctor's offices, political headquarters, and other Potentially revealing Locales" at <u>Five</u>, "Practically no expense" to the government. The Surveillance by Mr. Trader's own Cell phone "IS remarkably easy, Cheap, and efficient compared to traditional investigative tools". "The government [was able to] travel back in time to retrace [Mr. Trader's] whereabouts".

"In our time, unless a person is willing to live 'off the grid', It is nearly impossible to avoid disclosing the most personal of Information to third-Party Providers on a constant basis, Just to Navigate daily life. And the thought that the government should be able to access Such information without the basic protection that a warrant offers is nothing less than chilling". Davis, 785 F. 3d at 525 (Rosenbaum, J., concurring).

In Davis, the Now abrogated 11th circuit equivalent to Carpenter, Judge Rosenbaum concurred in the outcome, but expressed that the third Party doctrine warranted additional consideration and discussion:

16

"When, historically, we have a more specific expectation of privacy in a particular type of information, the more specific privacy ▆▆▆ interest must govern the fourth amendment analysis, even though we have exposed the information at issue to a third party by ▆ using technology to give, receive, obtain, or otherwise use the protected information. In other words, our historical expectations of privacy do not change or somehow weaken simply because we now happen to use modern technology to engage in activities in which we have historically maintained protected privacy interests. Neither can the protections of the fourth Amendment."
- Davis, 785 F. 3d at 524-25, 532 (Rosenbaum, J., concurring

The court in Carpenter took a stand, firmly declaring that it "is obligated - as subtler and more far-reaching means of invading privacy have become available to the government - to ensure that the progress of science does not erode fourth amendment protections. Here, the ▆▆▆▆▆▆▆ Progress of Science has afforded law enforcement a powerful new tool to carry out its important responsibilities. At the same time, this tool risks government encroachment of the sort the framers after consulting the lessons of history, drafted the fourth Amendment to prevent". The court then held that before using this new technology, "The governments obligation is a familiar one - GET A WARRANT". Carpenter, 138 S.ct at 2221

In order to identify and locate Mr. Trader,

The government used his historical IP Addresses to precisely locate him within his home, where his 30 Days of Location Information showed he would be, At the exact time his information Said he would be there. Even if Mr. Trader Knew that Kik was Keeping certin Data, It was not obvious that they were tracking his location, and storing that information for ▬▬ an extended period of time. It is NonSensical that the government should be able to obtain any record tracked and held by a third party, because there would almost never be a need to obtain a warrant for private information. Data in the hands of a third party will only increase as technology advances, and unfettered access to this data would inevitably lead to the governments increased access to intimate details of peoples lives. "Such a Chronicle implicates privacy concerns far beyond those Considered in Smith and Miller". Carpenter, ▬ 138 S. Ct at 2220

D) Mr. Trader's case is distinguishable from all case's prior to Carpenter which have dealt with the question of Fourth Amendment protection as it relates to an IP address.

    Almost all Federal courts prior to carpenter had concluded that internet users have no expectation of privacy in their IP address and related subscriber information. However, these case's are distinguishable from Mr. Trader's. First, a user's IP address and IP Address history are not the same. A user's IP Address is the current identification number assigned to their account by the Internet provider. In this case, that number is 76.110.46.234, and the provider is comcast. By accessing the internet at Mr. Trader's residence, he identified his connection, using the IP address for that location, through the provider's equipment. For instance, when H.S.I. in this case sent its request for disclosure to comcast, It asked them for the "Subscriber identification information" for "76.110.46.234" the user's IP address. That is Singular, not plural. The Agents asked for information for one IP address. A user's IP Address history (Historical IP Addresses) is a log of All IP Addresses that have been in connection to the account activity, regardless of the provider or the location identified by the number. For example, when H.S.I. in this case sent its request for disclosure to KiK, It asked them for all "Recent IP addresses" that were "Used by the account holder". That is plural, not Singular. There is a gigantic difference between the two and its an Important one,

because one discloses "basic Subscriber Information" and the other, A "distinct category of information". The latter is at issue here as opposed to prior cases. Second, A history of IP addresses from a Smartphone User, who accessed the Social Media Service only through an application on his Smartphone, provides information on the location of the device by default connection, i.e., the History of IP addresses. This Violates the Smartphone User's expectation of Privacy in the whole of his Physical Movements.

Prior cases were not Just before the Supreme Court decided Carpenter, but also did not tackle the issue of a cell phone User accessing the Internet through his phone. These Prior cases involve Computer's like Desktops that are not mobile, or laptops that are mobile, but Still have to be at a Physical location to connect to the internet via a wired or wifi connection. The data at issue here, although contains Multiple connection's via Wifi to Mr. Trader's home, A Physical location, Also contains Numerous connections to the internet via Mobile LTE and Hot Spot access. More Importantly however, is the fact that the government Knew that the records they were Seeking belonged to a User who was accessing the internet through a Smartphone, and a Smartphone application, and Knew what information they were going to recieve back from Kik. (DE 14-1 : 8-9) (DE Kik guide to law enforcement) That Means that While Mr. Trader was traveling from location to location Sending and recieving text messages, his Social media Service was following him, recording his movements through IP addresses, and the government

Knew all about it.

To put this in prospective, Mr. Trader could have been traveling on Interstate 95 for 30 minutes. Within that time, IF Mr. Trader sent and recieved a total of 15 messages on KiK, It is possible that all 15 messages, had a different IP address, a different remote port, or a different transactional chat log time stamp, indicationg a different coverage area, a different location. Just as agents here did with comcast, they could use the same means of identifying the regestered Providers for that coverage area, which in this case would be T-mobile, Mr. Trader's wireless provider, and agents here would have a record of Mr. Trader's movments for 30 minutes. It is a simple conclusion that accessing the internet through a smartphone is a whole new breed of technology compared to Desktop and laptop computer's.

In 14 out of 17 case's the government cites as precedent Desktop and laptop computer's were the devices used to access the internet. The other 3 case's were: U.S. v. D'Andrea, 497 F. Supp. 2d 114, 120 (D. mass. 2007) Here the government fails to mention this case was vacated by U.S. v. D'andrea, 648 F. 3d 1 (1st cir. 2011) in which "The government did not dispute a subjective expectation of privacy in their password protected online account, and that this expectation of privacy was, at least initially, Reasonable". The other two case's the government cites: U.S. v. Carpenter, 819 F. 3d 880, 887 (6th cir. 2016) Reversed and Remanded

by Carpenter v. U.S., 138 S.Ct. 2206 (2018)
and U.S. v. Davis, 785 f. 3d 498, 511 (11th cir. 2015) (en banc)
Abrogated by Carpenter v. U.S., 138 S.Ct. 2206 (2018)
(DE 14 : 5-8)

    Likewise, All 8 cases the District court Cited in
Denying Mr. Trader's Motion to Suppress, were Cited by the
government. (DE 15 : 5-6) Two of them being Davis and
Carpenter, The other's were :
U.S. v. Perrine, 518 f. 3d 1196, 1204-05 (10th cir. 2008)
(Defendant used home computer to access chat room)
U.S. v. forrester, 512 f. 3d 500 (9th cir. 2008)
(Government recieved warrant to install a pen register / Trap and trace
device on home internet account, to Monitor internet activity
to and from defendant's home computer)
U.S. v. Christie, 624 f. 3d 558, 573-74 (3rd cir. 2010)
(Defendant used home computer to access illegal Website)
U.S. v. Beckett, 369 f. App'x 52, 56 (11th cir. 2010) unpublished
(Defendant used home computer to chat with Minor's)
U.S. v. Weast, 811 f. 3d 743, 748 (5th cir. 2016)
(Defendant used file sharing software on his home computer)
U.S. v. Caira, 833 f. 3d 803, 806-07 (7th cir. 2016)
(Defendant used home and work computer's to e-Mail undercover Agent)
See also : U.S. v. Bynum, 604 f. 3d 161 (4th cir. 2010),
U.S. v. Wheelock, 772 f. 3d 825, 828 (8th cir. 2014)

(Defendants both used computer's at home)

All cases cited involve home or work Desktop or Laptop computer's. No case cited has dealt with a history of IP addresses from a cell phone user. That means all user's above were each in a fixed location while accessing the internet, And could not take their internet connection with them as they moved. A cell phone user can, And Mr. Trader did. The defendant has not found one case that addresses this issue, And to his knowledge, Neither has the government. Even if there is a case out there somewhere, There is none post carpenter. This is an issue of first impression.

Finally, if the District court and the government are correct, and this court finds Smith and Miller control this case simply because Mr. Trader's Location information is in the form of an IP address instead of CSLI, Then this court will have placed historical IP Addresses on the unprotected side of the barricade the Supreme court has just erected separating "Basic" and "Distinct" subscriber information, with CSLI falling squarely on the other, protected side. Since these two forms of Digital Data are only distinguished materially, The 11th circuit would essentially be giving the government a guide on how to circumvent the Supreme courts decision in carpenter using the steps agents took in this case to obtain essentially the same information. But, not to worry, I'm sure the

Government is not aware that Social Media apps like Facebook have over 1 billion user's, and its app has over 1 billion downloads to their devices.

E) The Stored Communications Act is not Applicable or Relevant because the Emergency Disclosure Request's Sent to KiK and Comcast were, on their face, Reckless and a total Disregard for the truth.

Because Mr. Trader had a reasonable expectation of Privacy in his physical movements, The S.C.A would not apply. "Our historical expectations of Privacy do not change or Somehow Weaken Simply because we now happen to use Modern technology to engage in activities in which we have historically maintained Protected Privacy interests". Davis, 785 F.3d at 524-25 (11th Cir. 2015) (Rosenbaum, J., concurring) "Whether the government employs its own Surveillance technology as in Jones or leverages the technology of a Wireless Carrier, we hold that an individual maintains a legitimate expectation of Privacy in the record of his Physical Movements... An order issued under Section 2703 (d) of the Act is not a permissible Mechanism for accessing historical cell Site records. Before compelling a Wireless Carrier to turn over a Subscriber's CSLI, The The governments obligation is a familiar one — GET A WARRANT". Carpenter V. US, 138 S.Ct at 2221 Carpenter, Id at 2217

Any Reliance on the S.C.A. by the government is Misplaced. Under the S.C.A., absent exigent Circumstances, the appropriate Statute to obtain the type of Information

Obtained here is 18 U.S.C. 2703. Under 2703, The government only has to meet the low Standard requirements for a court ordered Subpeona, which "Shall issue only if the governmental entity offers Specific and articulable facts Showing that there are reasonable grounds to believe that the ... records or other information Sought, are relevant and Material to an ongoing Criminal investigation". Mr. Trader contends the government could not meet this Standard. ③

Instead, when the government obtained Mr. Trader's location Information, It did so pursuant to 18 U.S.C. 2702 (c)(4), The Exigent circumstances exception carved into the S.C.A., which "Authorizes companies Storing electronic communications to disclose Such information 'to a governmental entity, If the Provider, In good faith, believes that an emergency involving danger of death or Serious physical Injury to any person Requires disclosure Without delay of information relating to the emergency' ". U.S. v. Beckett, 369 F. App'x 52, 56 (11th Cir. 2010) at 55, Citing: 18 U.S.C. 2702 (c)(4).

Mr. Trader admits, In making its request to both Kik and Comcast, the government represented that a Serious emergency had taken place, was on going, and likely going to happen again in the future. Mr. Trader further admits that Kik and Comcast, based on the representation made by the government, likely

in good faith believed that an emergency was present when they each released Mr. Trader's information to the government. Based on this, Mr. Trader once again admits that Kik and Comcast both likely complied with the S.C.A., to ▬ the extent that they had to, and should have. Mr. Trader's argument is not with the provider's release of his information, Mr. Trader's argument is with the government's request to the provider's.

The District court below found that "The government and Kik complied with the ▬▬▬ E.C.P.A., and even if they did did not, suppression is not an appropriate remedy" for ▬▬ constitutional violations of the S.C.A. (DE 15:8-9). The district court never decided or even ▬▬▬▬▬▬ discussed if exigent circumstances ever existed when the ▬▬ government sent their requests for disclosure to Kik and Comcast. This is important because the government was able to obtain constitutionally protected information without a judicial order, an administrative subpoena, or a showing of probable cause. As a result, the agents in this case were not relying on the ruling of a neutral and detached magistrate when attempting to, and ultimately obtaining, Mr. Trader's information.



Therefore, the government's actions were a violation of Mr. Trader's Fourth Amendment rights, because the warrantless seizure and search of his historical IP Addresses violated his right to privacy in the whole of his physical movements. Reliance on the S.C.A. by the government is misplaced because Mr. Trader suffered a constitutional violation, and therefore, the remedys discribed in the ▓ Act do not apply in this case.

And in any event, any attempt to justify the search using the S.C.A. is without merit because the government violated the Act itself. The only option for the government to legally obtain Mr. Trader's information using the S.C.A. is through a neutural and detached magistrate. The government in the alternative, claimed to have an emergency on two different requests, that did not exist. "The government bears the ▓▓▓▓ burden of proving that the exception applys and must establish both an exigency and probable ▓▓ cause". U.S. V. Davis, 313 F. 3d 1300 (11th Cir. 2002)

Mr. Trader asks this court to examine the facts known to the government at the time ▓ it sent requests for disclosure to the providers, which in this case consists ▓ only of one single chat conversation (DE Chat with minor), and then examine the "facts" as represented by the government in those requests. (DE Kik Request, Comcast Request)

Admittedly, The extent of the evidence the government had before filling out their Emergency Disclosure Requests for Mr. Trader's Location Information is powerful Evidence that a crime may have been committed. Mr. Trader does not deny the evidence showing an adult asking a child for sexual photographs and recieving them, is powerful. Nor does he deny the powerful evidence of possessing and distributing child pornography. However, while this evidence makes a powerful showing that crimes may have been committed, they are all crimes that the government, by statute, are held to the standards congress set fourth in 18 U.S.C. 2703. None of the crimes mentioned above, with the facts known to the government, qualify as an Exigent Circumstance.

It is then no wonder that the government decided not to cite any of these crimes as an Exigent Circumstance to either Kik or Comcast. In the requests to both provider's, the government represented different, much more serious crimes had been committed by Mr. Trader, were then on-going, and going to happen again in the future, unless the provider's release Mr. Trader's records to law Enforcement. The emergency the government claimed to have, was the Rape and molestation of Mr. Trader's daughter, by Mr. Trader himself. This Emergency never existed. Because of how the illegal activity was committed, the type of illegal activity that occured, and the complete chat conversation created, the government had a 100% accurate record of the crime, leaving no need

29

for circumstantial guesses. The crimes alleged by the government not only did not happen, but agents knew or should have known, did not happen.

Considering this, there is no logical explanation to how the government, in good faith, reasonably believed there was an emergency involving danger of death or serious physical injury, without any shred of indicia to what the government claimed to be investigating in their requests to the providers.

Even assuming arguendo, that powerful evidence of child abuse was received by the government, the record does not indicate in any manner, that the abuse was then on-going or that further abuse was imminent. For example: Lets pretend for a moment that the government had identification of a suspect, knowledge that suspect does have children, and verification that suspect, and/or his children, were the subjects depicted in the photographs distributed in the chat (All of which the government did not have), "Scott" never once claimed in the chat to be actively abusing his children, nor did he give any indication that he intends to abuse them in the future, and he certainly does not indicate in any way, the intent to molest or rape anyone. The man suspected as "Scott" was never photographed engaging in any illegal activity with minor's, and "Scott" never claimed to have taken any photograph's himself, whether

Prior to, or during, the conversation.

The entire record of the initial crime is one chat conversation. It can be proven through this conversation that "Scott" never indicated, not even a bit, to any allegations set fourth by the government in its requests. There existed no threat involving danger of death or serious physical injury to support a claim of exigency from the government, at least not in good faith.

In a similar, although arguably more serious situation, the 1st Circuit declined to find that exigent circumstances existed. In U.S. v. D'Andrea, 648 F. 3d 1 (1st cir 2011) the Massachusetts department of Children and Families (then called DSS) received a detailed report from a tipster who informed DSS that she resided in California and had a child with defendant Willie Jordan. The tipster identified defendants Jordan and Kendra D'Andrea by name, and as partners, provided D'Andrea's residential Address, and identified Jordan's employer by name. The tipster informed DSS that she had received a message on her mobile phone containing photographs of D'Andrea and Jordan performing sexual Acts on D'Andrea's eight-year-old daughter, who the tipster was able to identify by name, and of photographs of the daughter with her genitals exposed. D'Andrea had intended to send the message to Jordan, but sent it to the tipster by mistake. The tipster said

the pictures could be accessed by going to Sprint.com and entering a phone number and pass codes, which she provided to the DSS agent

The DSS agent reported it to the local police department as a case of child abuse. After several un-successful attempts at accessing the website, and at least one other phone conversation with the tipster, DSS agents were able to access the website, where they found numerous pornographic pictures of the victim, consistent with the tipsters report. A DSS agent printed out more then 30 of the photographs and took them to the police department. After viewing the photographs, a ▆▆▆ detective with the police department applied for a warrant to search D'Andrea's residence for evidence of child abuse and child pornography. The warrant affidavit stated the tipster told DSS the abuse was occurring at ▆ D'Andrea's residence, the same address of which the tipster provided, and a motor vehicles drivers license check, confirmed. The warrant was signed at midnight, and and the search commenced 10 minutes later. The officer's found D'Andrea and her two children, one of whom was the victim at the residence. D'Andrea was taken into custody and Jordan shortly there after.

After being indicted, the defendants moved to suppress all evidence on grounds that the search of the Sprint.com account violated their fourth amendment rights and all evidence

Obtained as a result is "Fruit" of an illegal Search. The District Court denied the Motion to Suppress without holding an evidentiary hearing, citing among other things, that "Internet user's have no reasonable expectation of privacy". The defendants then entered into conditional plea's of guilty, reserving their right to appeal the denial of their Motion to Suppress.

On Appeal, the 1st Cir vacated and remanded, holding that an evidentiary hearing was required to determine whether exceptions to the warrant requirement applied to the DSS agents accessing of the Sprint website containing child pornography.

The defendants first claim of error targets the district courts denial of the Motion to Suppress without holding an evidentiary hearing, but the focus of the defendants appeal is the DSS agent accessing the Sprint website account without a warrant.

The reasoning the district court gave in denying defendants Motion to Suppress was the private search doctrine. The 1st circuit however, held that the private search doctrine did not apply based on the record of the case. In the event the District court decided the private search doctrine did not apply, the government offered that exigent circumstances existed as a secondary reason to uphold the search. In a footnote, The District Court addressed

This issue:

"The governments 'emergency intervention' argument, based on Brigham City, Utah v. Stuart, ___ U.S. ___, 126 S.ct. 1943, 164 L.Ed. 2d 650 (2006) among other cases, provides a sufficient alternative one which to uphold the search of D'Andrea's apartment... DSS had received powerful evidence that a young child was being sexually abused and that the images of that abuse were being disseminated on the internet. It would have been a dereliction of duty for it to fail to act. While not directly relevant to the facts of this case, The E.C.P.A contains an emergency provision permitting an ISP provider to disclose account information to a governmental entity 'if the provider, in good faith believes that an emergency involving danger of death or serious physical injury to any person requires disclosure...' 18 U.S.C. 2702 (c)(4)". — U.S. v. D'Andrea, 487 F. Supp. 2d 114 (D.mass, 2007) at 6 n. 18.

In detail, the 1st cir explains its reasoning why Exigent circumstances did not apply, based on the record of the case. D'Andrea, 648 F. 3d 1 at 11-13. The court found that "powerful Evidence' of child abuse was received by DSS, but the record does not indicate that abuse was then on-going or that further abuse was imminent. Nor does it explain how the tipster — who told DSS she resided in California and never claimed

to have been present at the time of the abuse or to have known about it when it was going on, could have known whether further abuse was imminent at the time she called DSS". This is important because an objectively reasonable belief in the imminence of harm is a requirement for the emergency intervention exception. See: Brigham City, 547 U.S. at 403, 126 S.Ct. 1943 (referring to "Imminent Injury"). - D'Andrea, 648 F.3d1 at N.1

The Sum of that case was that the district Courts reliance as an alternative, on Exigent Circumstances was not supportable on the State of the record, and an Evidentiary hearing was needed to determine whether the authorities had an objectively reasonable belief in the imminence of harm.

The first circuits reasoning in D'Andrea, A very similar case directly bears on the merits of Mr. Trader's arguement Now. The information possessed by homeland Security Agents in this case is substantially less reliable, and less in quantity than in D'Andrea, with a more complete record of events leading up to the Search.

Here, there was no tipster. No one with Knowledge of who Mr. Trader was, who Mr. Trader's children were, nobody who could Could identify them, or knew if any of them exist outside the Social media application. There was no one with Information

on where Mr. Trader lived, worked, what Mr. Trader's home looked like, or where any alleged child abuse was occurring.

Moreover, there was never anyone actually alleging Mr. Trader committed any form of physical child abuse. The government had nothing more then a hunch, generated from 3 statements "Scott" made during the chat in ▮▮▮ reference to 3 images and a video. The depictions revealed no identities, and no reliability (much less certainty) that the individuals in the photographs were actually who "Scott" indicated them to be when he said "My youngest daughter", "my oldest daughter", "Me and my daughter".

All of these were present in D'Andrea, and the court still could not find exigency existed to justify the warrantless digital data search, because just as in Mr. Trader's case, even with "Powerful evidence of child abuse" the record did not "indicate that abuse was then on-going or that further abuse was imminent". nor did it explain how someone living in a different state "and never claimed to have been present at the time of the abuse or ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to have known about it when it was going on - could have known whether further abuse was imminent". D'Andrea at 12.

f) The good faith exception to the exclusionary rule does not apply in this case.

As the Supreme court has explained, the purpose of the exclusionary rule is not to remedy a private wrong, but rather as a practical means of deterring future unlawful behavior by law enforcement. U.S. v. Calandra, 414 U.S. 338, 347, 94 S.ct. 613, 38 L.Ed. 2d 561 (1974) Thus, "The deterrent purpose of the exclusionary rule necessarily assumes that police have engaged in willful, or at the very least, negligent, conduct" to deprive a defendant of a guaranteed right. U.S. v. Peltier, 422 U.S. 531, 539, 95 S.ct. 2313, 45 L.Ed. 2d 374 (1975) (Internal quotation marks omitted) As a result, the court has held that the deterrent effect of exclusion of evidence is minimal where an officer has acted on an objectively reasonable belief that his actions did not violate the fourth Amendment. U.S. v. Leon, 468 U.S. 897, 922, 104 S.ct. 3405, 82 L.Ed. 2d 677 (1984). In Leon, the court concluded that the exclusionary rule should not be applied to prevent the use in a criminal prosecution of evidence obtained by officers whose reliance on a warrant issued by a magistrate was objectively reasonable, even though it was later determined that probable cause for the issuance of the warrant was lacking. "Penalizing the officer for the ▓▓▓▓▓ Magistrate's error, rather then his own, cannot logically contribute to the deterrence of fourth Amendment violations".

*Id* at 921. So, to trigger the exclusionary rule, "Police conduct must be sufficiently deliberate that exclusion can meaningfully ~~deter~~ deter it, and sufficiently culpable that such deterence is worth the price paid by the justice system." *Herring v. U.S.*, 555 U.S. 135, 144, 129 S.ct. 695, 172 L.Ed. 2d 496 (2009)

In *Leon*, the court applied the good faith exception because the officers acted in objectively reasonably reliance on a warrant issued by a magistrate. However, the good faith exception is not restricted to situations in which police officers rely upon a warrant later found to be invalid. For example, the Supreme Court has also held that the exclusionary rule should not be applied to suppress evidence obtained by officers who acted in objectively reasonable reliance on a statute that authorized warrantless administrative searches, even though the statute was later found to violate the Fourth Amendment. *Illinois v. Krull*, 480 U.S. 340, 107 S.ct. 1160, 94 L.Ed. 2d 364 (1987). In *Krull*, the court explained that in light of the deterrent purpose of the exclusionary rule, "Evidence should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." *Krull*, 480 U.S. at 348-49 (internal quotation marks and citations omitted). See also: *Davis v. U.S.*, 564 U.S. 229, 236-37, 131 S.ct. 2419, 180 L.Ed. 2d 285 (2011)

Likewise, The "Ultimate measure of the constitutionality of a governmental Search is reasonableness". The court has established that warrantless Searches are typically unreasonable where "A Search is undertaken by law enforcement officals to discover evidence of criminal wrongdoing". Vernonia School Dist. 47 J. v. Acton, 515 U.S. 646, 652-653, 115 S.ct. 2386, 132 L.Ed. 2d 564 (1995). Thus, "In the absence of a warrant, a Search is reasonable only if it falls within a Specific exception to the warrant requirement". Riley, 573 U.S. at ___, 134 S.ct. 2473, 189 L.Ed. 2d 430, 439. "One well-Recognized exception applies when the exigencies of the Situation make the needs of law enforcement So compelling that a warrantless Search is objectively reasonable under the fourth Amendment. Such exigencies include the need to pursue a fleeing Suspect, protect individuals who are threatened with imminent harm, or prevent the imminent destruction of evidence". Carpenter, 138 S.ct. at 2223. (Internal quotations and citations omitted) In the context of Location information under 18 U.S.C. 2702 (c)(4) of the S.C.A. Specifically," The fourth Amendment issue turns on whether the circumstances known to law enforcement and presented to [the Provider] were within the category of 'exigent circumstances' that permit warrantless Searches. The core question is whether the facts would lead a reasonable, experienced officer, to believe that there was an urgent need to take action". U.S. v. Gilliam, 842 f. 3d 801 (2nd Cir. 2016) at 2-3. (Internal citations and

quotation marks omitted)" The government bears the burden of proving that the exception applies and must establish both an exigency and probable cause. In Emergencys, probable cause exists where law enforcement officials 'reasonably believe' that someone is in danger". U.S. v. Davis, 313 F. 3d 1300 (11th Cir 2002) (internal citations omitted)

In Mr. Trader's case, law enforcement obtained his location information pursuant to the Stored communications Act (SCA), 18 U.S.C. 2701 et Seq. Although 18 U.S.C. 2703 provides as an option that law enforcement obtain a warrant before acquiring such information from Service providers, the statute does not require law enforcement to do so. Because of this, if the court holds that the government conducted a Search under the meaning of the fourth amendment, And further holds a warrant is generally required before obtaining such information, the good faith exception would apply, so long as law enforcement complied with the statute without any assumed knowledge of willful, wrongful, or negligent conduct. In other words, bad faith.

The almost standard way to obtain this information prior to the Supreme courts decision in carpenter, was through use of a subpoena, issued by a Magistrate under 18 U.S.C. 2703. The government in Mr. Trader's case however, sent an emergency disclosure request by law enforcement, pursuant to 18 U.S.C. 2702 (c)(4),

To the communications provider's KiK and comcast, claiming to have an emergency involving danger of death or serious physical injury, compelling them to voluntarily disclose his information. [5] In doing so, law enforcement in a sworn Affidavit, said that Mr. Trader had been physically sexually molesting and Raping his daughter the night before, that the sexual assault was still on going, and will continue to happen in the future unless the disclosure is made.

However, no such emergency ever existed. The criminal activity that had taken place never gave rise to anything more than a hunch on the part of the government that such activity ~~████████~~ ~~███████████████████████████~~ had happened, and certainly no reason to think such activity was taking place at the time of the requests, or will take place in the future.

On this issue, the record is clear. No one ever alleged Mr. Trader committed any form of physical child abuse. Mr. Trader never said it, no victim ever disclosed it, no tipster ever reported it, no witness ever witnessed it. There were no images or videos depicting Mr. Trader or the man known as "Scott" committing abuse. [6] Moreover, there was not one person who knew who Mr. Trader was, who his children were, where they all lived, ~~████~~ or if any of them even exist outside of the social media application.

"Of Course, the burden of proving an exception to the Warrant requirement lies with the government. U.S. v. Jeffers, 342 U.S. 48, 51, 72 S.ct. 93, 95, 96 L.Ed. 59 (1951). "In Validating a warrantless Search based on the exigent Circumstances exception, the government must demonstrate both exigency and Probable cause ", U.S. v. Holloway, 290 F. 3d 1331 (11th Cir. 2002) at 1337

"In the typical case, Probable cause exists where the Circumstances would lead a reasonable person to believe a Search will disclose evidence of a crime". U.S. v. Burgos, 720 F. 2d 1520, 1525 (11th cir. 1983) In emergencies however, Law Enforcement Officers are not motivated by an expectation of Seizing evidence of a crime. Rather, the officers are compelled to Search by a desire to locate Victims and the need to ensure their own Safety and that of the public". Holloway, 290 F. 3d at 1337-38

There was absolutely No probable cause to believe that THOSE crimes had been committed, were currently being committed, or going to be committed. "Exigent Circumstances is an exception to the warrant, not the Probable cause requirement." D'Andrea, 648 F. 3d 1 at 13 See: Brigham City, 547 u.s. at 403, 126 S.ct 1943

No Reasonable, well trained law Enforcement officer, would be able to conclude, based on this record, that either

Probable cause, Exigency, or both ever Existed. The government misled the providers into disclosing Mr. Trader's information. That Sort of reckless disregard for the truth, is why the Exclusionary rule was put in place, to be used as a deterrent against the conduct Seen in this case.

Because the government Ran afoul of the Statutory Law created by the S.C.A., The government can not rely on it to Save the warrantless Search of Mr. Trader's Information. The good Faith Exception does not apply in this Case.

G) If this court holds that the government violated Mr. Trader's Fourth Amendment rights when it obtained his historical IP addresses without a warrant, All Fruits of the unlawful Search Should be Suppressed.

All Evidence Seized during an unlawful Search can Not constitute proof against the victim of the search. *Wong Sun v. U.S.*, 371 U.S. 471, 484 (1963) The Government obtained Mr. Trader's Home IP Address through the use of an Emergency Disclosure Request to Kik. If this court holds that to be an unlawful Search, any Evidence obtained as a direct result of the unconstitutional Search was therefore inadmissible under the "Fruits of the poisonous tree" Doctrine. See id. at 484-85. This includes, but is not limited to, the emergency disclosure requests sent to Comcast and SayHi, And the later Search of Mr. Trader's Residence. These Searches are Rooted in the government's discovery of Mr. Trader's identity and home address. Any issue regarding these Searches Should be remanded to the district court with instructions that an Evidentiary hearing be held. Mr. Trader Should be allowed to withdraw his plea of guilty and remanded back to the district court for further proceedings.

Footnotes:

① Device Specific information in and of itself could arguably have been a physical search of Mr. Trader's cell phone. "Courts agree that individuals do have a reasonable expectation of privacy in the contents of their computers. See eg., U.S. v. Turner, 839 F.3d 429, 434 (5th Cir. 2016) citing Riley v. California, ― U.S. ―, 134 S.ct. 2473, 2485, 189 L.Ed. 2d 430 (2014) (noting the recognized privacy intrest in the electronic contents of computers and cell phones)" U.S. v. Taylor, 250 F. Supp. 3d 1215 (N.D. Ala. 2017) at 1225

② The government never did indicate a reason for executing the search of Mr. Trader's home on the day or time executed. However, they did indicate multiple times that Mr. Trader accessed Kik from the IP address connected through wifi, for all 30 Days of records Starting May 1st 2017 through May 31st 2017. (DE 14: 12-14) (DE ▓ 14-1:9) The District court indicated this as well (DE 15:2, 11-12)

③ If more traditional means had been taken, The government also would have had to meet the Standards Set fourth in the current "Mutual Legal Assistance Treaty" (MLAT) the U.S. has with Canadian Law Enforcement agencies, Since despite what the government has Misled Judicial officials to believe, (DE 14-1:9) (DE:14:3) (DE 15:2), Kik Just as Say Hi, is "Headquarted outside

45

of the United States". The difference between the two companys, and the reason the government sent its request to Kik, instead of Say Hi, was they knew the Data Kik was collecting, and they knew how they could ~~[x]~~ obtain it, (DE Kik guide to Law Enforcement) while circumventing the process to request it.

(4) It should be noted and taken into consideration that on May 31st 2017, within hours of the governments requests for Disclosure being sworn to, the Affidavit Supporting the search of Mr. Trader's Residence was also sworn to. (DE 14-1 : 1-17). In that affidavit, there is no mention of Any Emergency Involving danger of death or Serious Physical Injury, Molestation, Rape, or Sexual abuse of any kind by Mr. Trader. The entire scope of the application was to search Mr. Trader's Residence, not for Evidence of Physical, or Sexual abuse, Not to save a victim from danger, but to locate and recover Evidence of Child Pornography.

(5) In doing so, Law Enforcement agreed prior to the disclosure, that they would provide a formal order of information pursuant to 18 U.S.C. 2703, within 72 hours of the disclosure of Mr. Trader's Information. The government agent also "declare[d] under penalty of perjury under the laws of the United States of America that the forgoing is true and correct". The government never disclosed this ~~[x]~~ order to the defendant, if Law Enforcement did indeed

recieve a formal order.

⑥ An experienced government agent, such as agent Brant in this case, who has had experience in many child pornography and child sex crime cases, should have noticed while examining the alleged depections of sexual abuse by Mr. Trader, that: All four depections sent to the minor by "Scott" are widely circulated on the internet, and are known victims of child pornography by the NCMCE. At least one image contained a website watermark (Frankspron.com) on the bottom corner of the picture, and the 37 second video had been edited and the sound was removed, which therefore could not have been taken ▓▓▓▓▓▓ live at the time of the chat. At the very least, an experienced agent would have checked the time and date stamp within the coding of the images, using software that is easily accessable to law enforcement before violating an Americans 4th Amendment rights, for a crime that is without evidence.

# U.S. COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

## CERTIFICATE OF SERVICE

United States _____ vs. Scott J. Trader _____ Appeal No. 17-15611-BB

FRAP 25(b) through (d) (see reverse) requires that at or before the time of filing a paper, a party must serve a copy on the other parties to the appeal or review. In addition, the person who made service must certify that the other parties have been served, indicating the date and manner of service, the names of the persons served, and their addresses. **You may use this form to fulfill this requirement.** *Please type or print legibly.*

I hereby certify that on (date) October 18 , 2018 ,

a true and correct copy of the foregoing (title of filing) Temporary Supplement Motion ,

with first class postage prepaid, has been (check one)

☐ deposited in the U.S. Mail        ☑ deposited in the prison's
                                         internal mailing system

and properly addressed to the persons whose names and addresses are listed below:

Eleventh Circuit Court of Appeals

56 Forsyth Street, N.W.,

Atlanta, Georgia, 30303.

_____

_____

_____

_____

Scott Trader
Your Name (please print)                    Your Signature

*Please complete and attach this form to the original document and to any copies you are filing with the court, and to all copies you are serving on other parties to the appeal.*

Exhibit R

Final Judgment on petition for Termination of Parental Rights

Dated 11/09/2017

7 pages

Filing # 64010450 E-Filed 11/09/2017 03:14:17 PM

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
IN AND FOR ST LUCIE COUNTY, FLORIDA
JUVENILE DIVISION

IN THE INTEREST OF:                              CASE NO:  562017DP000041

RABEKA LUELLA TRADER          DOB: 12/27/2012

*Minor Child*
_____/

## FINAL JUDGMENT ON PETITION FOR
## TERMINATION OF PARENTAL RIGHTS

THIS CASE came before the court on <u>October 13, 2017</u>, for a Manifest Best Interest

hearing on the termination of parental rights ("TPR") petition filed by the Department of

Children and Families ("The Department").   The TPR petition was filed on July 14, 2017. The

child was adjudicated dependent on May 17, 2017.

The following parties, participants, and their attorneys were present:

| | |
|---|---|
| Aurora I. Medina, Esq., | Attorney for Department |
| Quita Griffith | Dependency Case Manager |
| Eva Sugg, Esq., | Attorney for the Guardian Ad Litem |
| Ellen Shafer, | Guardian Ad Litem |
| Katrina Varner | Mother |

All parties had prior notice of the hearing.

The child that is the subject of this case is Rabeka Luella Trader whose date of birth is

reflected above.

The mother of the child is Katrina Anay Varner.  The mother was advised of the right to

counsel and has been represented by Chet Weinbaum, Esq.  The mother's attorney was not

present for the manifest best interest hearing.

The father of the child is Scott Joseph Trader. The father was advised of the right to counsel and was represented by Christopher A. Hicks, Esq. The father waived his appearance and his attorney's appearance for this manifest best interest hearing.

A Guardian ad Litem has been appointed to represent the best interest of the child.

The Court had the opportunity to listen to, observe, and weigh the evidence. The Court finds the following facts proven by clear and convincing evidence, and orders as follows.

The father, Scott Joseph Trader appeared in Court on September 28, 2017 and executed a written surrender of his parental rights to the child, Rabeka Luella Trader; pursuant to section 39.806(1)(a), Florida Statutes.

The Department is seeking to severe the parental rights of the father without severing the parental rights of the mother pursuant to section 39.811(6)(d), Florida Statutes. The parties stipulated on September 28, 2017, to the termination of the father's parental rights pursuant to section 39.811(6)(d), Florida Statutes.

Florida Statute section 39.810(1)-(11) details the factors the Court must consider in determining the manifest best interest of the child. The factors, and the findings for each factor are as follows.

(1) Any suitable permanent custody arrangement with a relative of the child. However, the availability of a nonadoptive placement with a relative may not receive greater consideration than any other factor weighing on the manifest best interest of the child and may not be considered as a factor weighing against termination of parental rights. If a child has been in a stable or preadoptive placement for not less than 6 months, the availability of a different placement, including a placement with a relative, may not be considered as a ground to deny the termination of parental rights.

The child, Rabeka has not been removed from her mother's custody.

(2) The ability and disposition of the parent or parents to provide the child with food, clothing, medical care or other remedial care recognized and permitted under state law instead of medical care, and other material needs of the child.

The father, Scott Trader, does not have the ability to provide Rabeka with food, clothing or financial support as he is currently incarcerated pending prosecution in State and Federal courts for sex crimes.

(3) The capacity of the parent or parents to care for the child to the extent that the child's safety, well-being, and physical, mental, and emotional health will not be endangered upon the child's return home.

The child remains with her mother.

Based on Samantha Trader's (Rabeka's sister) testimony at the dependency trial, this Court's findings after the trial and the pending criminal charges against Scott Trader; Rabeka's physical, mental and emotional health would be endangered if ever placed in Scott Trader's custody.

(4) The present mental and physical health needs of the child and such future needs of the child to the extent that such future needs can be ascertained based on the present condition of the child.

Rabeka has been diagnosed with PTSD. She is receiving therapy to address the PTSD and sexual abuse. Rabeka's mother is assuring that all of Rabeka's emotional and physical needs are being met.

(5) The love, affection, and other emotional ties existing between the child and the child's parent or parents, siblings, and other relatives, and the degree of harm to the child that would arise from the termination of parental rights and duties.

The child did have a bond with her father, however, any past bond with the father was destroyed by the sexual abuse perpetuated

against Rabeka by her father. Further contact with the father (due to the sexual abuse) would be more detrimental to Rabeka than any emotional detriment that could arise from the termination of the father's parental rights.

Rabeka will continue to visit her half-sister, Samantha, therefore, there would not be any detriment from the termination of the father's parental rights as it pertains to the sibling relationship.

(6) The likelihood of an older child remaining in long-term foster care upon termination of parental rights, due to emotional or behavioral problems or any special needs of the child.

Not applicable as the child resides with her mother.

(7) The child's ability to form a significant relationship with a parental substitute and the likelihood that the child will enter into a more stable and permanent family relationship as a result of permanent termination of parental rights and duties.

Not applicable as the child has not been removed from her mother's custody.

(8) The length of time that the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity.

Not applicable as the child has not been removed from her mother's custody.

(9) The depth of the relationship existing between the child and the present custodian.

Not applicable as the child has not been removed from her mother's custody.

(10) The reasonable preferences and wishes of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.

Rabeka is too young and not of sufficient intelligence to express a preference.

(11) The recommendations for the child provided by the children's guardian ad litem or legal representative.

Both the dependency case manager and the Guardian Ad Litem recommend that Scott Trader's parental rights be terminated.

<u>Conclusion</u>

The Court finds by clear and convincing evidence that:

The grounds for the termination of Scott Joseph Trader's parental rights have been proven as noted.

It is in the manifest best interest of Rabeka Luella Trader that the parental rights of the father, Scott Joseph Trader, be terminated.

Termination of the father's parental rights is the least restrictive means of protecting the child from serious harm. Due to the serious allegations of sexual abuse, termination of the father's parental rights is the only means to protect Rabeka from serious harm.

Based on all evidence presented, it is hereby ordered as follows:

1.  The petition is granted.

2.  The parental rights of the father, Scott Joseph Trader as to Rabeka Luella Trader are hereby terminated under section 39.806(1)(a), Florida Statutes.

3.  The evidence supports a single parent termination of parental rights pursuant to sections, 39.811(6)(d) and (e), Florida Statutes.

4.  The child, Rabeka Luella Trader, is to remain in her mother's custody.

5.  Pursuant to Fla. R. Jud. Admin. 2.505(f)(3), counsel for the parents will automatically be discharged following the expiration of the time for appeal, if no appeal is taken.

DONE and ORDERED in Ft. Pierce, Florida on this 9th day of November, 2017.

MICHAEL C. HEISEY
Circuit Judge

## NOTICE

Under Florida Statute Section 39.815, any child, any parent, guardian ad litem, or legal custodian of any child, any other party to the proceeding who is affected by this order of the court, or the department may appeal to the appropriate District Court of Appeal within thirty (30) days from the date this order is rendered (filed) and in the manner prescribed by the Florida Rules of Appellate Procedure.

You have the right to the effective assistance of appointed counsel in this termination of parental rights proceeding. Your attorney must provide reasonable, professional assistance. You have the right to file a written motion with the court alleging that counsel's performance was ineffective. In any such written motion you must identify specific errors of commission or omission that under the totality of circumstances evidence deficiencies in the exercise of reasonable, professional judgment in the case. You must also establish that cumulatively the deficient representation so prejudiced the outcome of the trial that but for the deficient representation your parental rights would not have been terminated.

If you decide to file a written motion you must do so within <u>20 days</u> of the date of this order. A motion must be filed by you and not an appointed attorney on your behalf. Copies of a motion must be sent to all parties. A motion must contain the case name and case number and indicate the date this order was issued by the court. A motion must identify specific acts or omissions in representation that constitute a failure to provide reasonable, professional assistance. You must explain how errors or omissions prejudiced your case to the extent that the result would have been different without appointed counsel's deficient performance.
*(See JB v DCF, 2015 WL 4112321 (Fla. July 9, 2015)

If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Corrie Johnson, ADA Coordinator, 250 NW Country Club Drive, Suite 217, Port St. Lucie, FL 34986, (772) 807-4370 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.

Copies furnished to :

| | |
|---|---|
| Aurora I. Medina, Esq. | C19.saintlucie.cls.eservice@myflfamilies.com |
| Chet Weinbaum, Esq. | lawofficescew@bellsouth.net |
| James Phillips, Esq. | James.Phillips@gal.fl.gov |
| Christopher A. Hicks, Esq. | hickslaw@comcast.net |

Nov 09, 2017

*[signature]*

Exhibit S

Final Judgment on petition for Termination of
Parental Rights

Dated  11/06/2017

6 pages

Filing # 63780804 E-Filed 11/06/2017 09:07:08 AM

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
IN AND FOR SAINT LUCIE COUNTY, FLORIDA
JUVENILE DIVISION

IN THE INTEREST OF:                                 CASE NO.: 562017DP000044

SAMANTHA LEANNE TRADER          DOB: 02/27/2006
Minor Child
_____/

FINAL JUDGMENT ON PETITION FOR
TERMINATION OF PARENTAL RIGHTS

THIS CASE came before the court on <u>October 13, 2017,</u> for a Manifest Best Interest

hearing on the termination of parental rights ("TPR") petition filed by the Department of

Children and Families ("The Department").   The TPR petition was filed on July 14, 2017. The

court withheld adjudication of dependency on April 17, 2017.

The following parties, participants, and their attorneys were present:

| | |
|---|---|
| Aurora I. Medina, Esq., | Attorney for Department |
| Quita Griffith | Dependency Case Manager |
| Eva Sugg, Esq., | Attorney for the Guardian Ad Litem |
| Ellen Shafer, | Guardian Ad Litem |
| Crystal Marsh, Esq. | Attorney for the Mother |
| Leanne Drew | Mother |

All parties had prior notice of the hearing.

The child that is the subject of this case is Samantha Leanne Trader whose date of birth is

reflected above.

The mother of the child is Leanne Drew. The mother was advised of the right to counsel

and has been represented by Crystal Marsh, Esq.      The father of the child is Scott Joseph

Trader. The father was advised of his right to counsel and has been represented by Christopher A.

Hicks, Esq. The father waived his appearance and his attorney's appearance for this manifest best interest hearing.

A Guardian ad Litem has been appointed to represent the best interest of the child.

The Court had the opportunity to listen to, observe, and weigh the evidence. The Court finds the following facts proven by clear and convincing evidence, and orders as follows.

The father, Scott Joseph Trader appeared in Court on September 28, 2017 and executed a written surrender of his parental rights to the child, Samantha Leanne Trader; pursuant to section 39.806(1)(a), Florida Statutes.

The Department is seeking to sever the parental rights of the father without severing the parental rights of the mother pursuant to section 39.811(6)(d), Florida Statutes. The parties stipulated on September 28, 2017, to the termination of the father's parental rights pursuant to section 39.811(6)(d), Florida Statutes.

Florida Statute section 39.810(1)-(11) details the factors the Court must consider in determining the manifest best interest of the child. The factors, and the findings for each factor are as follows.

(1) Any suitable permanent custody arrangement with a relative of the child. However, the availability of a nonadoptive placement with a relative may not receive greater consideration than any other factor weighing on the manifest best interest of the child and may not be considered as a factor weighing against termination of parental rights. If a child has been in a stable or preadoptive placement for not less than 6 months, the availability of a different placement, including a placement with a relative, may not be considered as a ground to deny the termination of parental rights.

> The child, Samantha, has not been removed from her mother's custody.

(2) The ability and disposition of the parent or parents to provide the child with food, clothing, medical care or other remedial care recognized and permitted under state law instead of medical care, and other material needs of the child.

> The father, Scott Trader, does not have the ability to provide Samantha with food, clothing or financial support as he is currently incarcerated pending prosecution in State and Federal courts for sex crimes.

(3) The capacity of the parent or parents to care for the child to the extent that the child's safety, well-being, and physical, mental, and emotional health will not be endangered upon the child's return home.

> The child remains with her mother.

> Based on Samantha's prior testimony at her sister's dependency trial, this Court's findings after the trial and the pending criminal charges against Scott Trader; Samantha's physical, mental and emotional health would be endangered if ever placed in Scott Trader's custody.

(4) The present mental and physical health needs of the child and such future needs of the child to the extent that such future needs can be ascertained based on the present condition of the child.

> Samantha sees a therapist for anxiety and depression. Samantha is exhibiting symptoms of hearing loss. Samantha's mother is assuring that all of Samantha's emotional and physical needs are being met.

(5) The love, affection, and other emotional ties existing between the child and the child's parent or parents, siblings, and other relatives, and the degree of harm to the child that would arise from the termination of parental rights and duties.

> The child did have a bond with her father, however, any past bond with the father was destroyed by the sexual abuse perpetuated

against Samantha by her father. Further contact with the father (due to the sexual abuse) would be more detrimental to Samantha than any emotional detriment that could arise from the termination of the father's parental rights.

Samantha will continue to visit her half-sister, Rabeka, therefore, there would not be any detriment from the termination of the father's parental rights as it pertains to the sibling relationship.

(6) The likelihood of an older child remaining in long-term foster care upon termination of parental rights, due to emotional or behavioral problems or any special needs of the child.

Not applicable as the child resides with her mother.

(7) The child's ability to form a significant relationship with a parental substitute and the likelihood that the child will enter into a more stable and permanent family relationship as a result of permanent termination of parental rights and duties.

Not applicable as the child has not been removed from her mother's custody.

(8) The length of time that the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity.

Not applicable as the child has not been removed from her mother's custody.

(9) The depth of the relationship existing between the child and the present custodian.

Not applicable as the child has not been removed from her mother's custody.

(10) The reasonable preferences and wishes of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.

Samantha is 11 years old. She is of sufficient intelligence to understand that her father's parental rights are being terminated. Samantha is in favor of her father's rights being terminated and wants to change her name.

(11) The recommendations for the child provided by the children's guardian ad litem or legal representative.

> Both the dependency case manager and the Guardian Ad Litem recommend that Scott Trader's parental rights be terminated.

<u>Conclusion</u>

The Court finds by clear and convincing evidence that:

The grounds for the termination of Scott Joseph Trader's parental rights have been proven as noted.

It is in the manifest best interest of Samantha Leanne Trader that the parental rights of the father, Scott Joseph Trader, be terminated.

Termination of the father's parental rights is the least restrictive means of protecting the child from serious harm. Due to the serious allegations of sexual abuse, termination of the father's parental rights is the only means to protect Samantha from serious harm.

Based on all evidence presented, it is hereby ordered as follows:

1.  The petition is granted.

2.  The parental rights of the father, Scott Joseph Trader as to Samantha Leanne Trader are hereby terminated under section 39.806(1)(a), Florida Statutes.

3.  The evidence supports a single parent termination of parental rights pursuant to sections, 39.811(6)(d) and (e), Florida Statutes.

4.  The child, Samantha Leanne Trader, is to remain in her mother's custody.

5.  Pursuant to Fla. R. Jud. Admin. 2.505(f)(3), counsel for the parents will automatically be discharged following the expiration of the time for appeal, if no appeal is taken.

DONE and ORDERED in Ft. Pierce, Florida on November 6, 2017.

MICHAEL C. HEISEY
Circuit Judge

**NOTICE**

Under Florida Statute Section 39.815, any child, any parent, guardian ad litem, or legal custodian of any child, any other party to the proceeding who is affected by this order of the court, or the department may appeal to the appropriate District Court of Appeal within thirty (30) days from the date this order is rendered (filed) and in the manner prescribed by the Florida Rules of Appellate Procedure.

You have the right to the effective assistance of appointed counsel in this termination of parental rights proceeding. Your attorney must provide reasonable, professional assistance. You have the right to file a written motion with the court alleging that counsel's performance was ineffective. In any such written motion, you must identify specific errors of commission or omission that under the totality of circumstances evidence deficiencies in the exercise of reasonable, professional judgment in the case. You must also establish that cumulatively the deficient representation so prejudiced the outcome of the trial that but for the deficient representation your parental rights would not have been terminated.

If you decide to file a written motion you must do so within <u>20 days</u> of the date of this order. A motion must be filed by you and not an appointed attorney on your behalf. Copies of a motion must be sent to all parties. A motion must contain the case name and case number and indicate the date this order was issued by the court. A motion must identify specific acts or omissions in representation that constitute a failure to provide reasonable, professional assistance. You must explain how errors or omissions prejudiced your case to the extent that the result would have been different without appointed counsel's deficient performance.
*(See JB v DCF, 2015 WL 4112321 (Fla. July 9, 2015)

If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Corrie Johnson, ADA Coordinator, 250 NW Country Club Drive, Suite 217, Port St. Lucie, FL 34986, (772) 807-4370 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.

Copies furnished to :

| | |
|---|---|
| Aurora I. Medina, Esq. | C19.saintlucie.cls.eservice@myflfamilies.com |
| Crystal Marsh, Esq. | cmarshlawfirm@gmail.com |
| James Phillips, Esq. | James.Phillips@gal.fl.gov |
| Christopher A. Hicks, Esq. | hickslaw@comcast.net |

Nov 06, 2017

*Sgn. S. Atkinson*

Exhibit T

State of Florida civil Docket Sheet

6 pages

Exhibit U

Trader's Drivers License

2 Pages





Exhibit V

Trader's Rap Sheet (criminal History Record)

14 Pages

Released to AUSA Marton Gyires 8 June 2017

Document

# HDR/2L01069,MRI0924911 -- ATN /0892618865ICEDHSGOV -- ********************* CRIMINAL HISTORY RECORD ********************* -- Data As Of 2017-06-08

## Properties

| Description | HDR/2L01069,MRI0924911 -- ATN/0892618865ICEDHSGOV -- ********************* CRIMINAL HISTORY RECORD ********************* -- Data As Of 2017-06-08 |
|---|---|
| Source Ori | FLIII0000 |

Released to AUSA Marton Gyires 8 June 2017

Document

# Related Media

## Title
writeup

## Time added
12/31/1969 19:00

## Media type
text/plain

```
HDR/2L01069,MRI0924911
ATN/0892618865ICEDHSGOV
**********************  CRIMINAL HISTORY RECORD  **********************
Data As Of             2017-06-08
**********************  Introduction  **********************
This rap sheet was produced in response to the following request:
FBI Number             789592DC0
State Id Number        FL06025792 (FL
)
Purpose Code           C
Attention              0892618865ICEDHSGOV
The information in this rap sheet is subject to the following caveats:
BECAUSE ADDITIONS OR DELETIONS MAY BE MADE AT ANY TIME, A NEW COPY
SHOULD BE REQUESTED WHEN NEEDED FOR FUTURE USE (FL)
THIS RECORD CONTAINS FLORIDA INFORMATION ONLY. WHEN EXPLANATION OF A
CHARGE OR DISPOSITION IS NEEDED, COMMUNICATE DIRECTLY WITH THE AGENCY
THAT CONTRIBUTED THE RECORD INFORMATION. THIS RECORD MAY ONLY BE USED
FOR CRIMINAL JUSTICE PURPOSES AS DEFINED BY THE CODE OF FEDERAL
REGULATIONS. (FL)
THIS IS A MULTI-SOURCE OFFENDER RECORD. (FL)
**********************  IDENTIFICATION  **********************
Subject Name(s)
TRADER, SCOTT JOSEPH
TRADER, SCOTT J  (AKA)
Subject Description
FBI Number             State Id Number
789592DC0              FL06025792 (FL
)
Social Security Number
085722918
Sex                    Race
Male                   White
Height                 Weight           Date of Birth
5'07"                  150              1985-06-13
Hair Color             Eye Color
Brown                  Brown
Scars, Marks, and Tattoos
```

OFFICIAL USE ONLY | LAW ENFORCEMENT SENSITIVE

This document is loaned to you for official use only and remains the property of the Department of Homeland Security. Any further request for disclosure of this document or information contained herein should be referred to HSI Headquarters together with a copy of the document.

Document

```
Code                        Description, Comments, and Images
TAT BACK                     ,
SC CHIN                     ,
Place of Birth
NEW YORK
Employment
Occupation                  AGEIS
Employer
Residence
Residence as of

1189 SW EDINBURGH DR, PT ST LUCIE, FL
************************** CRIMINAL HISTORY ***************************
============================ Cycle 001 =============================
Tracking Number             001
Earliest Event Date         2004-02-19
-------------------------------------------------------------------
Arrest Date                 2004-02-19
Arrest Case Number          2004002360
Arresting Agency            FL0560200
PORT ST. LUCIE POLICE DEPARTMENT
Arrest Type  ADULT
Charge                      001
        Charge Number       2004002360
Charge Tracking Number      5601065786
        Charge Literal      BATTERY-
                Agency      FL0560200
PORT ST. LUCIE POLICE DEPARTMENT
    Charge Description      TOUCH OR STRIKE DOM VIOL
            Statute         TOUCH OR STRIKE (FL784.03(1A1); FL
)
    NCIC Offense Code       1319
            Counts          001
          Severity          MISDEMEANOR
    Inchoate Charge         PRINCIPAL
    Enhancing Factor        1ST DEGREE
-------------------------------------------------------------------
Prosecutor Disposition (Cycle 001)
Prosecution Date            2004-02-19
Prosecution Agency          FL056015A STATE ATTORNEY'S OFFICE - FT. PIERCE
Charge                      001
        Charge Number       001
Charge Tracking Number      5601065786
        Charge Literal      BATTERY-
    Charge Description      Suppl Arr Degree:1ST
    Charge Description      Suppl Arr Level:MISDEMEANOR
    Charge Description      BATTERY
            Statute         BATTERY (FL784.03; )
    NCIC Offense Code       1319
            Counts          001
          Severity          MISDEMEANOR
    Enhancing Factor        1ST DEGREE
          Disposition       (Charges Dropped 2004-03-12; DROPPED/ABANDONED
```

OFFICIAL USE ONLY | LAW ENFORCEMENT SENSITIVE

This document is loaned to you for official use only and remains the property of the Department of Homeland Security. Any further request for disclosure of this document or information contained herein should be referred to HSI Headquarters together with a copy of the document.

Released to AUSA Marton Gyires 8 June 2017

Document

```
)
=========================== Cycle 002 ============================
Tracking Number        002
Earliest Event Date    2007-03-20
----------------------------------------------------------------
Arrest Date            2007-03-20
Arrest Case Number     550
Arresting Agency       FL0560200
PORT ST. LUCIE POLICE DEPARTMENT
Arrest Type  ADULT
Charge                 001
        Charge Number  550
Charge Tracking Number 5601111928
        Charge Literal BATTERY-
               Agency  FL0560200
PORT ST. LUCIE POLICE DEPARTMENT
     Charge Description TOUCH OR STRIKE DOM VIOL
              Statute  TOUCH OR STRIKE (FL784.03(1A1); FL
)
     NCIC Offense Code  1319
              Counts   001
             Severity  MISDEMEANOR
      Inchoate Charge  PRINCIPAL
      Enhancing Factor  1ST DEGREE
----------------------------------------------------------------
Prosecutor Disposition (Cycle 002)
Prosecution Date       2007-03-20
Prosecutor Agency      FL056013J ST. LUCIE COUNTY COURT
Charge                 001
        Charge Number  001
Charge Tracking Number 5601111928
        Charge Literal BATTERY-
     Charge Description Suppl Arr Degree:1ST
     Charge Description Suppl Arr Level:MISDEMEANOR
     Charge Description BATTERY
              Statute  BATTERY (FL784.03; )
     NCIC Offense Code  1319
              Counts   001
             Severity  MISDEMEANOR
      Enhancing Factor  1ST DEGREE
          Disposition  (Other 2007-05-02; FILED
)
----------------------------------------------------------------
Court Disposition      (Cycle 002)
Court Disposition Date       2007-08-02( SAME)
Court Case Number      562007MM001341AXXXCO
Court Agency           FL056013J
 ST. LUCIE COUNTY COURT
Charge                 001
        Charge Number  001
Charge Tracking Number 5601111928
        Charge Literal BATTERY-
     Charge Description BATTERY
```

OFFICIAL USE ONLY | LAW ENFORCEMENT SENSITIVE

This document is loaned to you for official use only and remains the property of the Department of Homeland Security. Any further request for disclosure of this document or information contained herein should be referred to HSI Headquarters together with a copy of the document.

Released to AUSA Marton Gyires 8 June 2017
Document

```
        Charge Description  TRIAL TYPE:NONE
        Charge Description  PLEA TYPE:NOLO CONTENDRE
               Statute  BATTERY (
FL784.03
; )
        NCIC Offense Code  1319
               Counts  001
              Severity  MISDEMEANOR
        Enhancing Factor  1ST DEGREE
            Disposition  (Other 2007-08-02; ADJUDICATION WITHHELD
)
------------------------------------------------------------------
Sentencing               (Cycle 002)
Sentence Date            2007-08-02
Sentencing Agency        FL056013J ST. LUCIE COUNTY COURT
Court Case Number        562007MM001341AXXXCO
Charge                   001
        Charge Number    001
        Charge Literal   BATTERY-
Sentence
PROBATION-001Y
============================ Cycle 003 =============================
Tracking Number          003
Earliest Event Date      2007-03-30
------------------------------------------------------------------
Arrest Date              2007-03-30
Arrest Case Number       779
Arresting Agency         FL0560200
PORT ST. LUCIE POLICE DEPARTMENT
Arrest Type  ADULT
Charge                   001
        Charge Number    779
Charge Tracking Number   5601112381
        Charge Literal   CONTEMPT OF COURT-
            Agency       FL0560200
PORT ST. LUCIE POLICE DEPARTMENT
        Charge Description  VIOL INJUNCTION PROTECTION DOMESTIC VIOLENCE
               Statute  VIOL INJUNCTION PROTECTION DOMESTIC VIOLENCE
                        (FL741.31(4A); FL
)
        NCIC Offense Code  5005
               Counts  001
              Severity  MISDEMEANOR
        Inchoate Charge  PRINCIPAL
        Enhancing Factor  1ST DEGREE
------------------------------------------------------------------
Prosecutor Disposition   (Cycle 003)
Prosecution Date         2007-03-30
Prosecutor Agency        FL056013J ST. LUCIE COUNTY COURT
Charge                   001
        Charge Number    001
Charge Tracking Number   5601112381
        Charge Literal   CONTEMPT OF COURT-
```

OFFICIAL USE ONLY | LAW ENFORCEMENT SENSITIVE

This document is loaned to you for official use only and remains the property of the Department of Homeland Security. Any further request for disclosure of this document or information contained herein should be referred to HSI Headquarters together with a copy of the document.

Released to AUSA Marton Gyires 8 June 2017

## Document

```
       Charge Description   Suppl Arr Degree:1ST
       Charge Description   Suppl Arr Level:MISDEMEANOR
       Charge Description   VIOLATION INJUNCTION DOMESTIC
                Statute     VIOL INJUNCTION PROTECTION DOMESTIC VIOLENCE
                            (FL741.31(4A); )
      NCIC Offense Code     5005
                Counts      001
                Severity    MISDEMEANOR
        Enhancing Factor    1ST DEGREE
             Disposition    (Other 2007-05-03; FILED
)
-----------------------------------------------------------------
Court Disposition          (Cycle 003)
Court Disposition Date             2007-08-02( SAME)
Court Case Number          562007MM001566AXXXCO
Court Agency               FL056013J
  ST. LUCIE COUNTY COURT
Charge                     001
           Charge Number   001
Charge Tracking Number     5601112381
         Charge Literal    CONTEMPT OF COURT-
       Charge Description   VIOLATION INJUNCTION DOMESTIC
       Charge Description   TRIAL TYPE:NONE
       Charge Description   PLEA TYPE:NOLO CONTENDRE
                Statute     VIOL INJUNCTION PROTECTION DOMESTIC VIOLENCE
                            (
FL741.31(4A)
; )
      NCIC Offense Code     5005
                Counts      001
                Severity    MISDEMEANOR
        Enhancing Factor    1ST DEGREE
             Disposition    (Other 2007-08-02; ADJUDICATION WITHHELD
)
-----------------------------------------------------------------
Sentencing                 (Cycle 003)
Sentence Date              2007-08-02
Sentencing Agency          FL056013J ST. LUCIE COUNTY COURT
Court Case Number          562007MM001566AXXXCO
Charge                     001
           Charge Number   001
         Charge Literal    CONTEMPT OF COURT-
Sentence
PROBATION-001Y
============================= Cycle 004 =============================
Tracking Number            004
Earliest Event Date        2007-11-09
-----------------------------------------------------------------
Arrest Date                2007-11-09
Arrest Case Number         779
Arresting Agency           FL0560000
  ST. LUCIE COUNTY SHERIFF'S OFFICE
Arrest Type  ADULT
```

**OFFICIAL USE ONLY | LAW ENFORCEMENT SENSITIVE**

This document is loaned to you for official use only and remains the property of the Department of Homeland Security. Any further request for disclosure of this document or information contained herein should be referred to HSI Headquarters together with a copy of the document.

Released to AUSA Marton Gyires 8 June 2017

Document

```
Charge                      001
           Charge Number    779
Charge Tracking Number      5601122576
        Charge Literal      PROB VIOLATION-
              Agency        FL0560000
ST. LUCIE COUNTY SHERIFF'S OFFICE
    Charge Description      BATTERY
              Statute       PROB VIOLATION- (FL948.06; FL
)
      NCIC Offense Code     5012
              Counts        001
              Severity      Unknown
      Inchoate Charge       PRINCIPAL
           Disposition      (Unknown 2007-11-09;
07MM1341)
Charge                      002
           Charge Number    779
        Charge Literal      PROB VIOLATION-
              Agency        FL0560000
ST. LUCIE COUNTY SHERIFF'S OFFICE
    Charge Description      VIOLATION OF DOMESTIC VIOLENCE INJUNCTION
              Statute       PROB VIOLATION- (FL948.06; FL
)
      NCIC Offense Code     5012
              Counts        001
              Severity      Unknown
      Inchoate Charge       PRINCIPAL
           Disposition      (Unknown 2007-11-09;
07MM1566)
============================== Cycle 005 ==============================
Tracking Number             005
Earliest Event Date         2010-11-05
----------------------------------------------------------------------
Arrest Date                 2010-11-05
Arrest Case Number          679
Arresting Agency            FL0560200
PORT ST. LUCIE POLICE DEPARTMENT
Arrest Type  ADULT
Charge                      001
           Charge Number    679
Charge Tracking Number      5601162982
        Charge Literal      BATTERY-
              Agency        FL0560200
PORT ST. LUCIE POLICE DEPARTMENT
    Charge Description      BATTERY - TOUCH OR STRIKE-DOM VIOL
              Statute       TOUCH OR STRIKE (FL784.03(1A1); FL
)
      NCIC Offense Code     1319
              Counts        001
              Severity      MISDEMEANOR
      Inchoate Charge       PRINCIPAL
      Enhancing Factor      1ST DEGREE
----------------------------------------------------------------------
```

This document is loaned to you for official use only and remains the property of the Department of Homeland Security. Any further request for disclosure of this document or information contained herein should be referred to HSI Headquarters together with a copy of the document.

Released to AUSA Marton Gyires 8 June 2017

## Document

```
Prosecutor Disposition    (Cycle 005)
Prosecution Date          2010-11-05
Prosecutor Agency         FL056013J ST. LUCIE COUNTY COURT
Charge                    001
            Charge Number 001
Charge Tracking Number    5601162982
         Charge Literal   BATTERY-
      Charge Description   Suppl Arr Degree:1ST
      Charge Description   Suppl Arr Level:MISDEMEANOR
      Charge Description   BATTERY
              Statute      BATTERY (FL784.03; )
      NCIC Offense Code    1319
              Counts       001
            Severity       MISDEMEANOR
      Enhancing Factor     1ST DEGREE
          Disposition      (Other 2010-11-23; FILED
)
------------------------------------------------------------------
Court Disposition         (Cycle 005)
Court Disposition Date           2011-02-23
Court Case Number         562010MM003585AXXXCO
Court Agency              FL056013J
  ST. LUCIE COUNTY COURT
Charge                    001
            Charge Number 001
Charge Tracking Number    5601162982
         Charge Literal   BATTERY-
      Charge Description   BATTERY
      Charge Description   TRIAL TYPE:NONE
      Charge Description   PLEA TYPE:NOLO CONTENDRE
              Statute      BATTERY (
FL784.03
; )
      NCIC Offense Code    1319
              Counts       001
            Severity       MISDEMEANOR
      Enhancing Factor     1ST DEGREE
          Disposition      (Convicted 2011-02-23; GUILTY/CONVICTED
)
------------------------------------------------------------------
Sentencing                (Cycle 005)
Sentence Date             2011-02-23
Sentencing Agency         FL056013J ST. LUCIE COUNTY COURT
Court Case Number         562010MM003585AXXXCO
Charge                    001
            Charge Number 001
         Charge Literal   BATTERY-
Sentence
PROBATION-001Y
============================ Cycle 006 ============================
Tracking Number           006
Earliest Event Date       2012-04-10
------------------------------------------------------------------
```

OFFICIAL USE ONLY | LAW ENFORCEMENT SENSITIVE

This document is loaned to you for official use only and remains the property of the Department of Homeland Security. Any further request for disclosure of this document or information contained herein should be referred to HSI Headquarters together with a copy of the document.

Released to AUSA Marton Gyires 8 June 2017

## Document

```
Arrest Date              2012-04-10
Arrest Case Number       715
Arresting Agency         FL0560200
PORT ST. LUCIE POLICE DEPARTMENT
Arrest Type  ADULT
Charge                   001
          Charge Number  715
Charge Tracking Number   5601178045
          Charge Literal CRUELTY TOWARD CHILD-
                 Agency  FL0560200
PORT ST. LUCIE POLICE DEPARTMENT
     Charge Description  CRUELTY TOWARD CHILD - DIRECT PROMOTE SEXUAL P
               Statute   DIRECT PROMOTE SEXUAL PERFORMANCE BY CHILD
                         (FL827.071(3); FL
)
     NCIC Offense Code   3802
               Counts    001
             Severity    FELONY
     Inchoate Charge     PRINCIPAL
     Enhancing Factor    2ND DEGREE
          Disposition    (Unknown 2012-04-10;
2012CF001062)
Charge                   002
          Charge Number  715
          Charge Literal LEWD LASCV BEHAVIOR-
                 Agency  FL0560200
PORT ST. LUCIE POLICE DEPARTMENT
     Charge Description  LEWD LASCV BEHAVIOR - EXHIBITION OFF LESS 18 Y
               Statute   EXHIBITION OFF LESS 18 YOA VICTIM LESS 16 YOA
                         (FL800.04(7A); FL
)
     NCIC Offense Code   3612
               Counts    001
             Severity    FELONY
     Inchoate Charge     PRINCIPAL
     Enhancing Factor    3RD DEGREE
          Disposition    (Unknown 2012-04-10;
2012CF001064)
------------------------------------------------------------------
Prosecutor Disposition   (Cycle 006)
Prosecution Date         2012-04-10
Prosecutor Agency        FL056015A STATE ATTORNEY'S OFFICE - FT. PIERCE
Charge                   001
          Charge Number  001
Charge Tracking Number   5601178045
          Charge Literal CRUELTY TOWARD CHILD-
     Charge Description  Suppl Arr Degree:2ND
     Charge Description  Suppl Arr Level:FELONY
     Charge Description  PROMOTING SEXUAL PERFORMANCE BY A CHILD
               Statute   DIRECT PROMOTE SEXUAL PERFORMANCE BY CHILD
                         (FL827.071(3); )
     NCIC Offense Code   3802
               Counts    001
```

**OFFICIAL USE ONLY | LAW ENFORCEMENT SENSITIVE**

This document is loaned to you for official use only and remains the property of the Department of Homeland Security. Any further request for disclosure of this document or information contained herein should be referred to HSI Headquarters together with a copy of the document.

Released to AUSA Marton Gyires 8 June 2017

Document

```
                Severity    FELONY
        Enhancing Factor    2ND DEGREE
             Disposition    (Charges Dropped 2012-05-08; DROPPED/ABANDONED
)
Prosecution Date
Prosecutor Agency           FL056015A STATE ATTORNEY'S OFFICE - FT. PIERCE
Charge                      002
           Charge Number    001
Charge Tracking Number      5601178045
          Charge Literal    SEX OFFENSE-AGAINST CHILD-FONDLING-
       Charge Description   Suppl Arr Degree:2ND
       Charge Description   Suppl Arr Level:FELONY
       Charge Description   LEWD LASCIVIOUS OR INDECENT ACT
                 Statute    LEWD OR LASCIVIOUS MOLEST/CONDUCT/EXHIBITION
                            (FL800.04; )
      NCIC Offense Code     3601
                  Counts    001
                Severity    FELONY
        Enhancing Factor    2ND DEGREE
             Disposition    (Charges Dropped 2012-05-08; DROPPED/ABANDONED
)
========================== Cycle 007 ==========================
Tracking Number             007
Earliest Event Date         2012-05-03
-----------------------------------------------------------------
Arrest Date                 2012-05-03
Arrest Case Number          773
Arresting Agency            FL0560200
PORT ST. LUCIE POLICE DEPARTMENT
Arrest Type  ADULT
Charge                      001
           Charge Number    773
Charge Tracking Number      5601178675
          Charge Literal    OBSCENE MATERIAL-POSSESS-
                 Agency     FL0560200
PORT ST. LUCIE POLICE DEPARTMENT
       Charge Description   OBSCENE MATERIAL-POSSESS - POSS CONTROL VIEW D
                 Statute    POSS CONTROL VIEW DEPICTION CHILD SEX CONDUCT
                            (FL827.071(5); FL
)
      NCIC Offense Code     3704
                  Counts    001
                Severity    FELONY
        Inchoate Charge     PRINCIPAL
        Enhancing Factor    3RD DEGREE
             Disposition    (Unknown 2012-05-03;
12CF1315)
-----------------------------------------------------------------
Prosecutor Disposition      (Cycle 007)
Prosecution Date            2012-05-03
Prosecutor Agency           FL056015A STATE ATTORNEY'S OFFICE - FT. PIERCE
Charge                      001
           Charge Number    001
```

OFFICIAL USE ONLY | LAW ENFORCEMENT SENSITIVE

This document is loaned to you for official use only and remains the property of the Department of Homeland Security. Any further request for disclosure of this document or information contained herein should be referred to HSI Headquarters together with a copy of the document.

Released to AUSA Marton Gyires 8 June 2017

## Document

```
Charge Tracking Number   5601178675
       Charge Literal    OBSCENE MATERIAL-POSSESS-
    Charge Description    Suppl Arr Degree:2ND
    Charge Description    Suppl Arr Level:FELONY
    Charge Description    POSSESSION OF CHILD PORNOGRAPHY 10 IMAGES OR M
            Statute       POSS CONTROL VIEW DEPICTION CHILD SEX CONDUCT
                          (FL827.071(5); )
   NCIC Offense Code      3704
            Counts        001
           Severity       FELONY
    Enhancing Factor      2ND DEGREE
        Disposition       (Dismissed 2012-10-04; NOLLE PROSSED
)
============================= Cycle 008 =============================
Tracking Number          008
Earliest Event Date      2012-10-04
--------------------------------------------------------------------
Arrest Date              2012-10-04
Arrest Case Number       698
Arresting Agency         FL0560000
ST. LUCIE COUNTY SHERIFF'S OFFICE
Arrest Type  ADULT
Charge                   001
       Charge Number     698
Charge Tracking Number   5601183225
       Charge Literal    NEGLECT CHILD-
            Agency       FL0560000
ST. LUCIE COUNTY SHERIFF'S OFFICE
    Charge Description    NEGLECT CHILD - WITHOUT GREAT HARM
            Statute       WITHOUT GREAT HARM (FL827.03(3C); FL
)
   NCIC Offense Code      3806
            Counts        001
           Severity       FELONY
    Inchoate Charge       PRINCIPAL
    Enhancing Factor      3RD DEGREE
        Disposition       (Unknown 2012-10-04;
12CF1315)
--------------------------------------------------------------------
Prosecutor Disposition   (Cycle 008)
Prosecution Date         2012-10-04
Prosecutor Agency        FL056015J 19TH CIRCUIT COURT - FT. PIERCE
Charge                   001
       Charge Number     002
Charge Tracking Number   5601183225
       Charge Literal    NEGLECT CHILD-
    Charge Description    Suppl Arr Degree:3RD
    Charge Description    Suppl Arr Level:FELONY
    Charge Description    CHILD NEGLECT
            Statute       NEGLECT CHILD- (FL827.03(3A); )
   NCIC Offense Code      3806
            Counts        001
           Severity       FELONY
```

OFFICIAL USE ONLY | LAW ENFORCEMENT SENSITIVE

This document is loaned to you for official use only and remains the property of the Department of Homeland Security. Any further request for disclosure of this document or information contained herein should be referred to HSI Headquarters together with a copy of the document.

Released to AUSA Marton Gyires 8 June 2017

Document

```
        Enhancing Factor  3RD DEGREE
            Disposition  (Other 2012-10-04; FILED
)
------------------------------------------------------------
Court Disposition      (Cycle 008)
Court Disposition Date           2012-10-04( SAME)
Court Case Number      562012CF001315AXXXXX
Court Agency           FL056015J
 19TH CIRCUIT COURT - FT. PIERCE
Charge                 001
        Charge Number  002
Charge Tracking Number 5601183225
        Charge Literal NEGLECT CHILD-
    Charge Description CHILD NEGLECT
    Charge Description TRIAL TYPE:NONE
    Charge Description PLEA TYPE:NOLO CONTENDRE
            Statute    NEGLECT CHILD- (
FL827.03(3A)
; )
    NCIC Offense Code  3806
            Counts     001
          Severity     FELONY
    Enhancing Factor   3RD DEGREE
        Disposition    (Other 2012-10-04; ADJUDICATION WITHHELD
)
------------------------------------------------------------
Sentencing             (Cycle 008)
Sentence Date          2012-10-04
Sentencing Agency      FL056015J 19TH CIRCUIT COURT - FT. PIERCE
Court Case Number      562012CF001315AXXXXX
Charge                 001
        Charge Number  002
        Charge Literal NEGLECT CHILD-
Sentence
CONFINEMENT-006M (MAX) IN COUNTY
Sentence
CREDITED TIME-4320 DAYS
Sentence
PROBATION-004Y006M
============================ Cycle 009 ============================
Tracking Number        009
Earliest Event Date    2012-10-05
------------------------------------------------------------
Arrest Date            2012-10-05
Arresting Agency       FL0560000
ST. LUCIE COUNTY SHERIFF'S OFFICE
Arrest Type  ADULT
Charge                 001
Charge Tracking Number 0014496741
        Charge Literal CRIMINAL REGISTRATION (NOT AN ARREST)-
            Agency     FL0560000
ST. LUCIE COUNTY SHERIFF'S OFFICE
    Charge Description  **** THE FOLLOWING IS A STATUS RECORD -- NOT AN
```

OFFICIAL USE ONLY | LAW ENFORCEMENT SENSITIVE

This document is loaned to you for official use only and remains the property of the Department of Homeland Security. Any further request for disclosure of this document or information contained herein should be referred to HSI Headquarters together with a copy of the document.

Released to AUSA Marton Gyires 8 June 2017

Document

```
                         ARREST ****
     Charge Description   CRIMINAL REGISTRATION  NOT AN ARREST  - CHILD
      NCIC Offense Code   9040
                Counts   001
              Severity   Unknown
           Disposition   (Not Prosecuted 2012-10-05; NOT PROSECUTED
                         RELEASED
)
=========================== Cycle 010 ===========================
Tracking Number          010
Earliest Event Date      2016-12-01
------------------------------------------------------------------
Arrest Date              2016-12-01
Arrest Case Number       740
Arresting Agency         FL0560200
PORT ST. LUCIE POLICE DEPARTMENT
Arrest Type  ADULT
Charge                   001
        Charge Number    740
Charge Tracking Number   5601224438
      Charge Literal     LEWD LASCV BEHAVIOR-
              Agency     FL0560200
PORT ST. LUCIE POLICE DEPARTMENT
     Charge Description   LEWD LASCV BEHAVIOR - MOLEST VIC LESS 12YOA
                         OFFENDER 18
              Statute    MOLEST VIC LESS 12YOA OFFENDER 18 YOA OR OLDER
                         (FL800.04(5B); FL
)
      NCIC Offense Code   3612
                Counts   001
              Severity   FELONY
       Inchoate Charge   PRINCIPAL
      Enhancing Factor    LIFE
           Disposition   (Unknown 2016-12-01;
16CF3220A)
------------------------------------------------------------------
Prosecutor Disposition   (Cycle 010)
Prosecution Date         2016-12-01
Prosecutor Agency        FL056015J 19TH CIRCUIT COURT - FT. PIERCE
Charge                   001
        Charge Number    001
Charge Tracking Number   5601224438
      Charge Literal     LEWD LASCV BEHAVIOR-
     Charge Description   Suppl Arr Degree:LIFE
     Charge Description   Suppl Arr Level:FELONY
     Charge Description   LEWD OR LASCIVIOUS MOLESTATION OFFENDER 18 OR
              Statute    MOLEST VIC LESS 12YOA OFFENDER 18 YOA OR OLDER
                         (FL800.04(5B); )
      NCIC Offense Code   3612
                Counts   001
              Severity   FELONY
      Enhancing Factor    LIFE
           Disposition   (Other 2016-11-22; FILED
```

OFFICIAL USE ONLY | LAW ENFORCEMENT SENSITIVE

This document is loaned to you for official use only and remains the property of the Department of Homeland Security. Any further request for disclosure of this document or information contained herein should be referred to HSI Headquarters together with a copy of the document.

Released to AUSA Marton Gyires 8 June 2017

Document

```
)
*********************** INDEX OF AGENCIES ***********************
Agency                    PORT ST. LUCIE POLICE DEPARTMENT
; FL0560200;
                          UNKNOWN CONTACT
Address
-------------------------------------------------------------
Agency                    STATE ATTORNEY'S OFFICE - FT. PIERCE
;
                          FL056015A;
                          19TH JUDICIAL CIRCUIT
Address
-------------------------------------------------------------
Agency                    ST. LUCIE COUNTY COURT
; FL056013J;
                          UNKNOWN CONTACT
Address
-------------------------------------------------------------
Agency                    ST. LUCIE COUNTY SHERIFF'S OFFICE
; FL0560000;
                          UNKNOWN CONTACT
Address
-------------------------------------------------------------
Agency                    19TH CIRCUIT COURT - FT. PIERCE
; FL056015J;
                          221 SOUTH INDIAN RIVER DRIVE, ROOM 206 - ZIP
                          33450
Address
* * * END OF RECORD * * *
```

**OFFICIAL USE ONLY | LAW ENFORCEMENT SENSITIVE**

This document is loaned to you for official use only and remains the property of the Department of Homeland Security. Any further request for disclosure of this document or information contained herein should be referred to HSI Headquarters together with a copy of the document.