UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FILED BY _____ D.C.

DEC 08 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. PIERCE

SCOTT JOSEPH TRADER,
    Plaintiff/ Movant

vs.

UNITED STATES OF AMERICA
    Defendant

*14348*

Case No. 22-~~14247~~-CV- Middlebrooks
Case No. 17-14047-~~CV~~- Middlebrooks

*CR*

**MOVANT, SCOTT JOSEPH TRADER'S MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION TO VACATE SENTENCE PURSUANT TO
28.U.S.C.§2255**

Movant, SCOTT JOSEPH TRADER respectfully files his Memorandum of Law

in support of his Motion to Vacate Sentence Pursuant to 28.U.S.C.§2255

and states as follows:

    I.  **Trader is actually innocent of violating 18 U.S.C.2422(b) (Count 1), which
prohibits anyone from engaging in "any sexual activity for which any person could
be charged with a criminal offense."  The underlying completed "sexual activity",
Trader's violation, is based upon two State of Florida offenses involving child
pornography.  However, according to the Federal definition of "sexual activity",
relating to the inclusion of child pornography, these two underlying offenses do not
fall within the meaning of "sexual activity" for a violation of 2422(b).  In addition,
Trader was not "engaged" in the production of the child pornography, an essential
element under the plain language of the Statute, and is therefore innocent of the
violation.**

    Trader was charged with a violation of 18 U.S.C. 2422(b), which in relevant part

prohibits:  The enticement of a  minor to engage in sexual activity for which any person

can be charged with a criminal offense.  (See Trader's indictment (Dkt. 7:1) and his

stipulation of facts and offense elements (Dkt. 22:5-6)), charge him with a completed act

only, and not an attempt.)

    There are four elements required for a violation of this statute, only two are

1

relevant here.

The first element requires the defendant to achieve a mental state over a minor, and then using that mental state to have that minor engage in sexual activity.   When researching what "sexual activity" means, it's discovered that "this statute, which is found in Chapter 117 of Title 18 of the United States Code, does not define "sexual activity". See: United States v. Paulsen, 591 Fed. Appx. 910, 913 (11th Cir. 2015), United States vs. Dominguez, 997 F.3d 1121,1124 (11th Cir. 2021)).  "Moreover, "sexual activity" is not a defined term in the Federal criminal code" anywhere.  See: United States vs. Taylor, 640 F.3d, 255,257 (7th Cir. 2011).  The only known definition is that Congress specifically defined sexual activity to include the production of child pornography, as amended by 18 U.S.C. 2427,  Dominguez, 997 F.3d 1121, 1125 (11th Cir.2021).

18 U.S.C. 2427 in full, is the statute for the "inclusion of offenses relating to child pornography in definition of sexual activity for which any person can be charged with a criminal offense" and it states "in this chapter 18 U.S.C. 2421 et seq., the term "sexual activity for which any person can be charged with a criminal offense" includes the production of child pornography, as defined in Section 2256 (8)."

This means one of the many forms of conduct 18 U.S.C.2422 prohibits, as explained by 18 U.S.C.2427, is the same conduct prohibited by 18 U.S.C. 2251(a), the production of child pornography.  See:  United States v. Isabella  918 F.3d 816, 830-836, 845-849 (10th Cir. 2019) (collecting cases) , United States  vs. Lee, 603 F.3d 904,913 (11th Cir. 2010)).  However, the statute's  broad reach, by its own construction does not extend to the conduct prohibited by 18 U.S.C. 2252,  the possession and distribution of

2

child pornography.  Congress clearly considered the "inclusion of offenses relating to child pornography when defining sexual activity, but only included the production of it within its definition"  See: <u>Reynolds  v. United States,</u> 2018 U.S. Dis. Lexis 40078 (S.D. Illinois, March 12, 2018).  "Congress did not define the term 'sexual activity' as it is used in <u>2422(b)</u> other than to say that it "includes the production of child pornography" (See  <u>18 U.S.C. 2427</u> Id. at 2018 U.S. Dist. Lexis 17; See also  <u>Taylor,</u> 640 F. 3d at 259 (7th Cir. 2011)).  "The  government acknowledges that 'sexual activity' for which any person can be charged with a criminal offense is explicitly defined to include producing child pornography <u>18 U.S.C. 2427.</u>, US V OWENS, 2022  US DIST. LEXIS 130016 (S.D.W.V July 24, 2022) at Lexis 5-7

The second element relevant here requires and incorporates within it, an underlying offense, that if committed, any person can be charged with a criminal offense. As relating to Trader, this means that his alleged conduct on the nights of May 15, 2017 and May 30, 2017 (when the violation of <u>2422(b)</u> occurred) would first have to fall within the Federal definition of sexual activity, and second, be chargeable conduct. These two parts equal one whole element, which then incorporates the offense that the defendant could have been charged with.  In Trader's case, the conduct was "the use of a cell phone (internet)  by an adult, to entice a minor to take and send one nude photo.  The offenses that he could have been charged with, as stated by the government are:  Florida Statute <u>827.071(3),</u> promoting a sexual performance by a child; and  <u>827.071(5)(a),</u> possessing a sexual performance by a child.  (See  Dkt. 22:5-6, Dkt. 52 pg. 20/21-25 pg. 21/1-25).

The government, however, did not specify which of those subsections of Florida Statute <u>827.071,</u> its relying upon for its basis of conviction for <u>18 U.S.C. 2422(b)</u> and

3

instead relies on them both.  But when the charging   someone with 2422(b), for an

offense relating to child pornography, only the production of child pornography falls

within the Federal definition of sexual activity.  (See 18 U.S.C. 2427).  In the instant

case, one of the multiple statutory violations of the government relies upon for conviction

if understood correctly, is the successful enticement of a minor to engage in the sexual

activity of possession of child pornography.

        In past cases, a defendant charged with 2422(b) with an underlying offense

involving child pornography, have relied upon the federal statute prohibiting the

production of child pornography, 18 U.S.C.2251, or relied upon a state statute prohibiting

the production of child pornography which tracks the language of the federal one.

        None have relied upon the possession of child pornography either at the State or

Federal level as an underlying offense, nor could they as that would lead to absurd and

erroneous results, such is the one here, where the government has essentially defined the

term "sexual activity" to include the possession of a photograph.

        Subsequently, when combining the government's definition of sexual activity with

the statutory construction and interpretation of 2422(b), which again prohibits the

enticement of the minor to engage in the sexual activity which the Defendant could be

charged with a criminal offense, It creates the absurd result that the minor is somehow

engaged in the possession of the photograph that the Defendant could be charged with

possessing.

        The second underlying criminal offense the government depends upon for its basis of

conviction under 2422(b), is a violation of Florida Statute 827.071(3), promoting   a

sexual performance by a child.  (See Dkt. 22:5-6; Dkt 52: pg.20-22).

However, there are multiple problems with charging this underlying criminal offense, the most relevant being that "the least culpable conduct the statute criminalizes is the distribution of a photograph of a child less than 18 years of age." (See <u>United States vs. Kushman,</u> 984 F.3d1359, 1364-65 (11th Cir. 2021). This does not fall under the Federal definition of sexual activity for an violation of 2422(b).

Florida Statute 827.071(3) states in relevant part: "a person is guilty of promoting a sexual performance by a child when, knowing the character and content thereof, he or she <u>produces, directs or promotes</u> any performance which includes sexual conduct by a child less than 18 years of age" (emphasis added). (See Exhibit A)

As an initial matter, subsection (3) of Florida Statute 827.071, prohibits multiple forms of criminal conduct relating to child pornography, and each form of conduct has different alternative means for a defendant to violate the Statute. In other words, the terms "produces, directs or promotes" each prohibit different conduct. "Produce" or "direct" are not defined by statute and should be given their plain and ordinary public meaning. "Promote", however, is defined by statute as: "to procure, manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmute, publish, distribute, circulate, disseminate, present, exhibit or advertise or to offer or agree to do the same." Florida Statute 827.07(1)(d). So "promote" means among other things, to "distribute".

In their acknowledgment of offense elements, the government lists the whole subsection (3) of 827.071. Then, within subsection (3), emphasized in bold lettering are the words "produces, directs, or promotes any performance which includes sexual conduct by a child less than 18 years of age." This language either implies that Trader's conduct spanned the entire scope of the Statute, or the government did not specifically

identify by what means Trader violated the Statute.  But, as the Eleventh Circuit has already recognized, because Trader was charged and convicted with a completed act, the government cannot charge multiple crimes with the possibility Trader's conduct could potentially violate at least one of them.  "Obviously , if a defendant has successfully persuaded a minor to engage in an unlawful sexual act, this will typically mean that  the act was completed and the likelihood of multiple potential statutory violations is greatly reduced.  Indeed, in such a circumstance, the defendant will be charged not with attempt but with actually enticing a minor to commit the specific sex act that was completed and that will be listed in the indictment."  United States vs. Jockisch, 857 F.3d 1122, 1133 n.13  (11th Cir.2017).

The government cannot list potential violations for a completed act.  And even if they could, all the potential violations would have to fall under the Federal definition of sexual activity relating to child pornography.  Because the least culpable conduct criminalized by Statute 827.071(3) is distribution, the alternative means here do not.

Separately, Trader's stipulated conduct with MV1 does not amount to a violation of Section 2422(b).  The stipulation of facts in support of Trader's guilty plea summarizes his conduct leading to the violation as follows:  "HSI saw chats from Trader to the victim that included among other things, numerous requests from him for the victim to send him nude images.  At first, the victim provided Trader several pictures of her fully clothed, which clearly indicted she was a preteen female.  Trader also asked the victim, among other things, how old she was and she told him she was nine, to which he replied, "Aw, you're pretty for your age. You look sexy in those pajamas"  In response to Trader's requests, the victim eventually sent at lest one photo of her vagina and one photo

of her pulling her shirt up, exposing her nipples (Count 1-Enticement of a minor to

engage in sexual activity).    (emphasis added)  (See Dkt 22:2, Dkt 52 pg. 13/17-25, pg.

15/1-7).

      Trader's stipulated conduct, while repugnant, does not amount to "sexual

activity", i.e. the <u>production</u> of child pornography.  There is no evidence within the

factual basis to support a conviction that Trader enticed a minor to procure a photograph.

And while there is ample evidence based on the stipulated facts that Trader attempted to

produce a nude photograph, and successfully did <u>receive</u> child pornography, neither one

fall within the Federal definition of "sexual activity" in relation to child pornography.

(See <u>Newman vs. United States</u>, 2018 U.S. Dist. Lexis 208357 (W.D. Kentucky, Dec. 11,

2018)  In <u>Newman</u>, just as in the instant case, the defendant was charged with violation of
Section 2422(b), with an underlying offense of child pornography.  The Court found in
<u>Newman</u>, that an evidentiary hearing was required because the factual basis did not
contain evidence that the defendant enticed the minor victim to engage in "sexual
activity" within the meaning of the statute. )

      Finally, there is no evidence in discovery that a photograph of MV1 was ever

produced <u>for</u> Trader.  A forensic exam of MV1's electronic device, and more specifically,

the time and date stamp of the two images MV1 sent to Trader, was never done.  This is

important because on the night of May 30, 2017, when the Thomasville Police

Department initially reported to MV1's home, her mother signed a  consent to search

form for her daughter's tablet. ( See Exhibit B)

      During the initial search of the tablet, one of the responding officers "looked

through the messages on the Say Hi app and found several other conversations with men

that MV1 had on her phone.  Including "Scott" there were five men messaging MV1 who

at some point admitted to knowing she was young, underage and still requesting photos

of her or sending her nude photos of themselves."

The officer continued "MV1 also has other messaging apps on her tablet and access to the internet which I did not go through while MV1's mother was in my vehicle. She asked to check the photo gallery on MV1's tablet and we observed the naked photos of herself she sent to Scott along with photos of Scott's daughters he sent her saved to her gallery. She also had nude photos of other men saved to her gallery that were sent to her through the Say Hi app".

MV1 had multiple conversations with the men who all requested nude photos of her and sent her nude photos of themselves. She had these photos saved to her photo gallery in her tablet. She also had the photos of herself which she sent to Trader, saved to her gallery. Importantly, no one knows how long the photos of MV1 were saved to her gallery, or how many times they were distributed from her gallery. Trader is convicted of enticing MV1 to produce these two photographs, but she could have produced these two photographs for any one of the men she was having a conversation with. Without examining the time and date stamp of the photos, there is no way to be sure. Notably, the government has never said MV1 "produced" these photographs for Trader. The only verb the government has ever used is "sent". MV1 "sent" these to Trader and that sounds good. But because Trader was convicted of a completed act and not an attempt, 2422(b) and 2427 require more than just "sent", more than just a substantial step in an attempt to produce. The statutes and subsequent case law require the "sexual activity" to have actually taken place. There is no evidence of this anywhere and the government has never offered any.

Actual prejudice is shown by establishing a miscarriage of justice. See Howard vs. United States, 374 F.3d 1068, 1072 (11th Cir. 2004). The conviction of one who is

actually innocent is itself a miscarriage of justice.  See <u>Sawyer vs. Whitley</u>, 505 U.S. 333, 339 (1992).

Accordingly, for all of the foregoing reasons, and for the grounds raised in Trader's 2255 Motion, Trader is actually innocent of a <u>2422(b)</u> violation because:  1. his conduct does not fall within the definition of sexual activity; and 2. he did not engage with, or cause the minor to engage in, the production of child pornography.

**II.  Trader's defense attorney rendered ineffective assistance because he failed to investigate the specific facts of Trader's case, the charge against him and the case law in effect at the time of Trader's plea.  Specifically and for the reasons set forth in Ground I,  when counsel failed to discuss Count 1 of the indictment and when he advised Trader to plead guilty to it.  Additionally, Appellate counsel was ineffective for failing to agree in Trader's appeal that he: 1. was actually innocent of Count I;  2. there was insufficient evidence; and 3. the factual basis does not support a conviction under <u>Section 2422(b)</u>**

A defendant alleging ineffective assistance of counsel must show that: 1. counsel's performance did not reach an objective standard of reasonableness; and 2. counsel's deficient performance prejudiced the defense, depriving the defendant of a trial whose result is reliable.   <u>Strickland vs. Washington</u>, 466 U.S. 668, 687-88 (1984). Deficient performance is that which is "not within the wide range of competence demanded of attorneys in criminal cases". <u>Id.</u> at 687.   Prejudice is established when " there is a reasonable probability but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>Id.</u>, at 694.

Where a defendant enters a guilty plea upon the advice of counsel, "the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases" <u>Hill vs. Lockhart</u>, 474 U.S. 52,56 (1985). <u>Strickland</u>'s prejudice prong is modified in the context of a guilty plea, and prejudice is

shown if "there is a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial" Id. at 59. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. 694.

As set forth in Ground I, count 1 charged Trader with successfully enticing a minor to  1. "engage" in  2. any "sexual activity" which  3. he could be "charged with a criminal offense". These necessary elements of 2422(b) were of critical importance to the government's conviction of him on this count. The government bore the burden of proof that Trader met each of these elements.  For the reasons forenamed in Section I., Trader's counsel was ineffective because he failed to investigate: 1. the specific facts of Trader's case; 2. the charge against him and 3. the relative case law in effect at the time of Trader's guilty plea. ( See Dkt 52. Trader's change of plea hearing was held on September 29, 2017)

The current form of 2422(b) was enacted in 1998, with 2427 added the same year. Taylor, 640 F.3d 255,258 (7th Cir.2011) and Dominguez, 997 F.3d 1121,1124-25 (11th Cir. 2021).  Until 2021, there was an open question of law in the Eleventh Circuit as to the definition of "sexual activity" in 2422(b).  See:  Dominguez, 997 F.3d 1124-25 (11th Cir. 2021).  Unless the "sexual activity" involves child pornography. 18 U.S.C.2427.  The limits of 2422(b), set by 2427, are clear.  Because one of the State of Florida statutes relied upon by the government is the possession of child pornography, Trader's counsel was ineffective for failing to dismiss Count 1 and advising Trader to plead guilty to it.  Additionally, because the other State of Florida statute relied upon by the government includes offense conduct such as distribution of child pornography, counsel was again ineffective for failing to discuss Count 1 and for advising Trader to

10

plead guilty to it.

Moreover, because Eleventh Circuit precedent at the time of Trader's guilty plea indicated a defendant could not be convicted of violating Section 2422(b)'s completed act requirement listing multiple potential statutory violations as the predicate offense, (See Jockisch, 857 F.3d 1122, 1133 n.13 (11th Cir. 2017) (May 26, 2017), counsel was ineffective for failing to dismiss Count 1, and advising Trader to plead guilty to it.

Fourth, because "criminal offense" is not defined by Statute 2422(b) to include State and Federal offenses, and because the issue still has not been addressed by the Eleventh Circuit, Trader's case presented a non-frivolous, meritorious claim as to why State offenses did not apply to Section 2422(b) violations. (See Section II, n.7). His counsel was ineffective when he failed to dismiss Count 1 based on this ground, and further ineffective for advising Trader to plead guilty to it.

Finally, because Trader's counsel failed to investigate who MV1 produced the two photos for, which she later "sent" to Trader and because an essential element in a completed act of 2422(b) is actually enticing the minor to engage, in this case, the production of the only child pornography involved in this Count, and because counsel had knowledge of MV1 having had sexual communications with at least four other adult men, counsel was wholly ineffective for advising Trader to plead guilty when he had a viable defense to Count 1 he knew nothing about and advising him to sign a factual basis which lacked support of the Section 2422(b) violation. See United States v. Isabella, 918 F.3d816 (10th Cir.2019) The defendant was charged with 2422(b) for both attempted and completed acts. Id. at 824.n.2. The government relied on an underlying Federal offense of production of child pornography Id. at 830. Because the defendant did not play a role in the production, as the only child pornography charged in the count, pre- dated the defendant's conversations with the minor, he could only be found guilty of attempted production. Id. at

814 n.2, 836.  See also United States vs. Isabella 2021 U.S. Dist. Lexis 221663, at 10-11 (Dist.Colo.Nov.17, 2021)  The distinguishing factor between Isabella and Trader is, Isabella was charged with both attempted and completed acts.  Trader was only charged with, and convicted of a completed act.

      The prejudice Trader suffered as a result of counsel's deficient performance individually and combined is substantial. Trader is serving a total sentence of LIFE. Count 1 is the only count of which he is convicted, with a maximum of LIFE.  Without that conviction, Trader could not face that sentence, as maximum statutory penalty for each of the other four counts in his conviction, is a terms of years.  Therefore, Trader's sentence is itself proof of the prejudice, which can not be ignored. Had counsel informed Trader of the forenamed defenses to Count 1, the result of the proceeding would have been different.  Trader would not have pled guilty to this Court and instead would have proceeded to trial.

      Trader's Appellate attorney was ineffective for failing to argue in his appeal a claim of actual innocence.  A defendant who fails to assert a claim is entitled to a plain error review of that claim when raised for the first time on appeal. Under a plain error standard, the defendant bears the burden to show there is: 1. Error   2. that is plain and 3. that affects substantial rights.  See United States vs. Kushmaul, 984 F.3d 1359, 1363 (11th Cir. 2021). "When the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error" Id.

      In this case, the language of all statutes relied upon for Count 1 are explicitly clear. See  18 U.S.C. 2422(b), 18 U.S.C. 2427, Fla. Stat. 827.071(3), Fla. Stat. 827.071(5)) For the reasons set forth in Section . I,  Trader  is actually innocent of violating Section 2422(b), and there was no evidence or factual basis to support a conviction. Additionally, Appellate counsel was made aware of these specific issues with Trader's

Section 2422(b) conviction, and for some unexplainable reason, counsel did not raise

these issues on appeal even after Trader expressly told him to.   (See Exhibits E and F.
Trader's counsel was told during a phone call after the initial brief was filed, about the issues regarding his
2422(b) conviction. Counsel was further informed through correspondence and told to raise this issue on
direct appeal. Additionally, counsel's wife, Lydia Pittaway, who was representing Trader in his original
case against the State of Florida was also made aware of the issues surrounding his 2422(b) conviction)

Thus, but for failure of Appellate counsel, the Eleventh Circuit would have held

that it was plain error to convict Trader and sentence him to LIFE for Count 1.   Further,

they would have instructed the District court to vacate Trader's Section 2422(b)

conviction and LIFE sentence and remand back for further proceedings.


### III.  Trader's appellate counsel was ineffective for  failing to raise issues for the first time in the initial brief, as opposed to the reply brief.

Where a defendant enters a guilty plea upon the advise of counsel, " the

voluntariness of the plea depends on whether counsel's advice was within  the range of

competence demanded of attorneys in criminal cases "  Hill, 474 U.S. 52, 56 (1985).

Strickland's prejudice prong is modified and prejudice is shown if "there is a reasonable

probability that, but for counsel's errors, [the defendant] would not have pleaded guilty

and would have insisted on going to trial."   Hill at 59.  "A reasonable probability is a

probability sufficient to undermine confidence in the outcomes" Strickland, 466 U.S. at

694.

Additionally, a defendant is entitled to the effective assistance of counsel on direct

appeal, and should be evaluated under the Strickland standard of prejudice.  Smith vs.

Robbins, 528d U.S. 259 at 285-86 (2000).  To show prejudice under Strickland, the

defendant "must show that the deficient performance prejudice the offense" Strickland at

687. And prejudice is established when "there is a reasonable probability, but for

counsel's unprofessional errors, the result of the proceeding would have been different. <u>Strickland</u> at 694.

Trader signed a conditional plea agreement. (See Dkt. 21) He did so after developing a strategy with counsel which centered around bringing a specific argument on direct appeal.   However, when counsel filed the initial brief,  (See  Appellant's brief 9/10/2018)  Trader had no knowledge of it. It was poorly drafted and barely included anything within it that counsel had discussed with Trader prior to signing the plea agreement.  This is not a new complaint.  Trader sent multiple pro se motions to the Eleventh Circuit after the brief was filed expressing his dissatisfaction with counsel. (See pro se motions 9/26/2018, 10/16/2018, 10/23/2018, 1/18/2019, 11/22 2019, 4/1/2019). Within these motions, Trader had asked the court for permission to supplement the brief, or alternatively remove counsel from the case and rest the briefing schedule.  The motion listed enumerated reasons for this action, explained why, and include a proposed initial brief to supplement or replace the one counsel filed. (See specifically Trader's pro se motions dated 1/18/2019 and 1/22/2019).

After counsel responded to Trader's claims (See response of counsel dated 10/4/2018 and 2/1/2019), the government filed their brief   (See government's brief dated 1/10/2019) and the court granted an extension of time to file a reply.  Within that motion  for an extension of time, counsel told the court he was going to incorporate Trader's proposed initial brief into the reply brief. (See Motion for Extension of Time 1/17/2019- pg. 1 n.4).  Trader once again wrote the court, cited correspondence from counsel and Eleventh Circuit  case law and informed the court that counsel is suggesting to raise issues for the first time in a reply brief, which he is not permitted to do. (See pro

se motions 1/18/2019- pg. 8 n.18, CDS pg.9/n. 18, 1/22/2019 pg. 8 n. 18, CDS

pg/11/n.18. The court denied Trader (See Orders dated 12/19/2018, 4/4/2019) and

counsel filed a reply brief that was almost word for word what Trader had proposed. (See

Appellant's reply brief 3/4/2019)

    When the Eleventh Circuit decided the case, they only addressed a limited amount

of Trader's arguments and instead cited case law which said, unsurprisingly that the court

will not consider arguments raised for the first time in a reply brief.  United States v.

Trader, 981 F.3d, 961,969 (11th Cir.2020). Unexplainably, counsel, an attorney with

decades of experience, clearly did not know or did not care to know this well established

case law, even after his client informed him of it.  The issues Trader wanted presented in

the initial  brief not only had merit, and were new questions of law after the Supreme

Court decided  Carpenter v.United States, 138 S.Ct. 2206 (2018), but they were

instrumental to Trader in deciding to plead guilty conditionally.  It was always the plan

between him and counsel to bring these arguments to the Eleventh Circuit after Carpenter

was decided.   But what was brought within the initial brief is best described as a lazy,

broad in scope attempt to argue the right to privacy in a defendant's IP address and e mail

address.  Trader's narrowly crafted, specific argument brought in the reply were not and

still have not been addressed by the Eleventh Circuit.

    The questions brought with these arguments include the main issue of Trader's

appeal: whether the warrantless seizure and search of historical records created by a cell

phone, revealing the location and movements of that cell phone user over 30 days is

permitted by the Fourth Amendment if the data revealing the location and movements

were collected in the form of IP address information.

15

This is not the question the court decided because it is not the argument put forth by counsel within the initial brief. That was the right to privacy of an IP address in general (See Appellant's brief 9/10/2018, pgs.17-18) not ones that are generated by a cell phone use, so the court never addressed the right to privacy in the cell phone user's physical movements. The reply brought this argument to the court's attention (See Appellant's reply brief 3/4/2019 pgs.1-6), based on Carpenter and United States v. Jones 565 U.S.400, 132 S.Ct. 845(2012)  but the court did not consider it. Trader, at 969.

Additionally, counsel's argument led the court in Trader to conclude "many different devices access wireless internet networks: computers, tablets, gaming consoles, house hold appliances and more. And each of these devices has an internet protocol address. We can not conclude that internet protocol addresses are cell phone records when they are a feature of every electronic device that connect to the internet. Trader at 969.

(internal quotations omitted)  (The court also reached this conclusion based in part on the lack of information about the location data provided by KIK to Homeland Security. Because counsel did not attach the records of this data to the Motion to Suppress, they never became part of the record on review, and the Appellate court was never able to view them. Counsel was wholly ineffective for not providing the District Court with the information which was not just the basis for the Motion to Suppress, but was the defendant's whole argument on appeal.

Counsel later incorrectly informed Trader that the Appellate court would have access to review these records through discovery. This incorrect information influenced Trader's decision to plead guilty conditionally. And because the court at oral argument questioned where the information contained with in the briefs came from, counsel could not point to anywhere within the record to back the tracking claims made by Trader. (See Exhibit Oral Argument, 11/19/2020- pg.9/5-25, pg. 10/1-24, pg. 22/20-23.)

Had counsel provided the tracking data to the District Court with the Motion to Suppress, the Appellate court would have reviewed it, and the result of the proceeding would have been different. The court would have been able to view the tracking of Trader's physical movements and would have held it violated his right to privacy guaranteed by the Fourth Amendment. Likewise, Trader would not have pled guilty conditionally had counsel correctly informed him that this data would not be part of the record on appeal. Trader's entire strategy on appeal was based around this data. It strains credulity to believe he would have signed the plea agreement otherwise. (SEE EXHIBIT K)

Therefore, counsel was ineffective for not expanding the record in the District Court with the necessary information needed to prevail on direct appeal ,while at the same time knowing the strategy developed with his client. Had counsel not provided incorrect information to Trader

16

before signing his plea agreement, he would not have pled guilty and instead would have proceeded to trial.)

Counsel in the initial brief, mentioned a right to privacy in the IP addresses and then pointed the court towards <u>Carpenter</u>. But he seemingly left the primary argument Trader wanted made, up to the court to make for him.. However, when Trader signed his conditional plea agreement, he expected his counsel, not the court, to argue on his behalf. The main question Trader wanted presented to the Court which was the deciding factor in signing the conditional plea, was not brought to the court until the reply brief. Had it not been for counsel's error, Trader would have prevailed on appeal. This performance by counsel can only be describe as falling below an objective standard of reasonableness.

In another argument not considered by the court, based in part on <u>United States vs. Karo,</u> 468 U.S. 705, 104 S. Ct. 3296(1984), <u>Kyllo vs. United States</u>, 533. U.S. 27, 121 S. Ct. 2038 (2001) and <u>United States vs. Jones</u>, 565 U.S. 400, 132 S. Ct. 945 (2012), the question brought within it was: Is a cell phone user's expectation of privacy within his home, and the physical movements to and from his home, heightened after the <u>Carpenter</u> decision, if the data revealing the location and movements were collect in the form of an IP address information. Once again, because this argument was brought as part of the reply brief, the court did not consider it. <u>Trader</u> at 969. (See Appellant's reply brief., 3/4/2019 pgs.6-8)

In sum, when Trader agreed to plead guilty it was conditional. He was going to appeal after the <u>Carpenter</u> decision and base the appeal around these two questions. Counsel was fully aware of that strategy prior to signing the plea, immediately following the <u>Carpenter</u> decision and reaffirmed well before the initial brief was filed. (See Exhibit E. Trader submits to the court as evidence the letters he sent to counsel over the years, reaffirming his position that counsel knew the strategy of Trader's case all throughout the criminal process. )

This case is a prime example of where counsel's deficient performance is "not within the wide range of competence demanded of attorneys in criminal cases" (See <u>Strickland</u> at 687). Even Trader, with no legal experience had realized counsel's incompetence had damaged his chances of prevailing on appeal and tried to stop it. This can only add to the claim that Trader was not provided with effective assistance during the appeal.

Trader was prejudiced by this because had he known his specific argument and issues he wanted the court to address on appeal would no be considered, he would not have signed the conditional plea agreement. (See Pro Se motions 1/18/2019-CDS pgs.6-7/n.11, pg. 8/n.16 , 1/22/2019-CDS pgs. 8-9/n.11, pg.10/n.16 ). He would have proceeded to trial. He could have later negotiated a different plea agreement, one where certain counts were dropped to reduce his maximum time in prison. The conditional part of the plea agreement was what Trader received as part of the give and take process of negotiating with the government. (See <u>Santobello v. New York,</u> 404 U.S. 257,262; 92 S. Ct.495, 499 (1971). And it was taken away due to counsel's misfeasance.

Separately, if counsel hadn't failed to effectively represent his client, he would have raised the most important issues of Trader's appeal within the initial brief as opposed to the reply brief. An effective attorney would have known well established case law within the Circuit or at the vest least corrected his mistake once notified. Had the Eleventh Circuit been presented the argument Trader wanted before the court, there is a reasonable probability the result of the proceeding would have been different. The Eleventh Circuit could have held Trader's Fourth Amendment rights were violated. The Court could have remanded the case back to the District Court with orders to vacate Trader's convictions and allowed time to withdraw his plea of guilty. The Court would have had any number

of available recourses but for counsel's ineffectiveness.

**IV. Counsel was ineffective for failing to object in any meaningful way to the introduction of a "Parenting Plan Evaluation" report, illegally obtained by the government and which factored into the Judge's determination when sentencing Trader to LIFE.**

The right to the effective of assistance of counsel extends to sentencing, and should be evaluated under Strickland.  See Glover vs. United States, 531 U.S.198, 121 S. Ct. 696 (2001).  Trader was not afforded this right. Counsel was ineffective for failing to object in any meaningful way, to the introduction of a "Parenting Plan Evaluation" report conducted in 2013 as part of Trader's on going child custody dispute. (See Exhibit O, Parenting Plan Evaluation Report).  This report is highly confidential, protected as private under the laws of the State of Florida  and the United States and was obtained by the government illegally from Trader's electronic device.

In 2013 and due to on going child custody disputes, the Honorable Barbara W. Bronis, Judge of the 19th Judicial Circuit in and for St. Lucie County, Florida ordered a "Parenting Plan Evaluation" and appointed an independent expert to conduct a social investigation and study of both the parents and the child. The primary issue to be addressed was whether the existing order, under which each party has equal time sharing with the child, should be modified and if so, how much and why.

After the evaluation was finished, a report detailing its results was written on October 22, 2013, and a copy of the report was provided to the attorneys representing each of the parents and a copy was provided to the court.  The parents were not permitted to possess a copy of the report, and on December 1, 2013, after the custody dispute was resolved, the report was entered on the civil docket of the case under "order of

confidentiality of court document" (*See Exhibit T*)

However, Trader, without his attorneys knowledge had taken a photo of each of the

reports 37 pages for his personal records, and stored them on his laptop computer. That

laptop was seized by Homeland Security agents on June 1, 2017, pursuant to a search

warrant. Notably, that search warrant only gave agents permission to search for evidence

of visual depictions involving the sexual exploitation of minors. Trader is not aware of

another search warrant giving agents permission to search for documents related to

Trader's family court proceedings, mental or medical health, or anything else that the

"Parenting Plan Evaluation" report may be interpreted as (See <u>Florida vs. US HHS</u>, 648
F. 3d, 1235,1334-35 (11th Circuit, 2011) (In pleading guilty Trader was not contesting
ownership of the seized electronics. Additionally, mental health and medical records are
protected by all related acts enacted prior to and after the enactment of HIPAA. They are not
ordinary documents such as banking records. Moreover, this is a sealed document within the
court of the State of Florida. And to permit such a document to be seized pursuant to this search
warrant, would be to permit a general search which the Fourth Amendment prohibits.)

Trader is also not aware of what evidence of crimes the government would be searching

documents such as the "Parenting Plan Evaluation" report for. In other words, the

photographs of the report are not visual depictions of the sexual of minors. The

government legally should not have been allowed to search for, and possess this report,

which means, the government should not have been allowed to present this report at

sentencing and to repeatedly use this report against Trader to show his recidivism.

To be sure, agents did not request permission from Trader, nor did Trader give

agents permission at any time, to read, use, have or possess any kind of medical or

mental health record, such as this report. Likewise, agents did not request permission

from the court to obtain this document, which is still sealed as of this writing. Moreover,

the government admitted at sentencing they obtained the report from Trader's laptop

computer. (See Dkt. 56, pgs.36-37) And they introduced the photographs of the report,

not the report itself.  (See Dkt.56, pg. 36/23-25)  There is no question the government

knew the nature of this report was highly confidential.  It is listed as such on the first two

pages and the government clearly read the report.

   During sentencing, Trader repeatedly told counsel to object to the introduction of this

report based on these grounds.  But counsel, for some unexplainable reason, objected

only to the relevance of the report, and nothing else. ( See Dkt. 56 pg.37/5-11).  Even

Trader was able to notice the government was using this report to show recidivism, so it

is no surprise that particular objection failed.  Throughout the entire proceeding, Trader

told counsel to object to the introduction of this report, and he did not.

   Counsel's failure to object to the introduction of, or move for  the exclusion of, the

"Parenting Plan Evaluation" based on any of the previously mentioned grounds,

prejudiced Trader because the government used this report over and over again

throughout the almost two hour long proceeding, to rebut Trader's argument that 28

years would be an appropriate sentence. (See Dkt. 56, pgs.36-38, pgs. 42-43, pg. 55, pgs.

79- 80, pgs. 91-92).  The government used this report during their presentation of

evidence with H.S.I. Agent,  Brian Ray.  (See Dkt.56, pgs.36-38).  They used it during

cross-examination of Trader's expert witness, Dr. Michael P. Brannon, PSY.D.,

Psychologist  (See  Dkt. 56, pgs. 55-56) and the government used this report during their

closing argument (See Dkt. 56, pgs. 79-80).

   The government continuously used this report to show the court that nothing but

LIFE would be sufficient for Trader because of his recidivism.  And Judge Middlebrooks

agreed. Specifically, Judge Middlebrooks cited this report as a factor in determining

Trader's sentence: " I  have no confidence that he will stop this behavior because he

continued it while on bond from a state court proceeding and even while he was being

evaluated by medical professionals who he was, apparently able to fool into believing he

didn't present a threat to his children a the same time he was committing crimes against

those children" (See Dkt. 56, pgs. 91-92)   Judge MddleBrooks goes on to say that he

"considered and takes seriously Mr. Peacock's arguments about the possibility that age

may provide protection, but given the history in this case, I'm not convinced of that" Id.

Had  counsel objected to the introduction of this report, based on the fact it was

obtained illegally, and without consent or permission fro the court, Trader's sentence

would have been different. He would have been sentenced to a term of imprisonment of

around 30 years, as requested, and would have had the chance to get out of prison at

around the age of 60 years old.  The Supreme Court has said "any amount of actual jail

time has Sixth Amendment significance"  Glover vs. United States, 531 U.S. 198,

203, 121 S. Ct. 696 (2001),  Lafler v. Cooper, 132 S.Ct.1376 (2012) )

The Sixth Amendment significance in Trader's case is enormous because his sentence is

LIFE, and not a term of years.  He will never have the opportunity to get out of prison,

and this would have been different had the government not been allowed to introduce that

report, which was the deciding factor of Trader's sentence.

At the very minimum, an objection to the report's introduction that was overruled,

would have required the court to discuss how this document was obtained, and if the

government had the court's permission or the party's consent.  This would have

preserved the issue for proper Appellate review.  Counsel was told to do this throughout

the proceeding, had every opportunity to do it, but failed to do so.

Therefore, counsel rendered ineffective assistance at sentencing when he failed to

object to the government's introduction of the "Parenting Plan evaluation" report, which the government obtained illegally, and without consent from Trader's electronic device. Had counsel objected to the admissibility of this confidential, protected, report, there is at the very least, a reasonable probability that the result of the proceeding would have been different. Trader's sentence would have been a terms of years, and not LIFE, but for deficient performance.

## CONCLUSION

For all the foregoing reasons, and for the reasons not yet included within this memorandum, Trader requests that his court conduct an evidentiary hearing on his Section 2255 motion and thereafter grant all relief to which he may be entitled.

I declare under penalty of perjury, pursuant to 28 U.S.C. 1746, that the foregoing is true and correct.

Executed on this __5th__ day of December 2022.

Respectfully submitted,

*Scott Trader*
SCOTT TRADER
Reg. No. 16118-104
St. Lucie County Jail
900 Rock Rd.
Ft. Pierce FL 34945

<u>Certificate of Service</u>

I hereby certify that on t his __5ᵗʰ__ day of __December,__ 2022, I mailed through the prison legal mail system, 1 copy of the foregoing document for delivery to all counsel of record.

*Scott Trader*

SCOTT TRADER
Reg No. 16118-104
St. Lucie county Jail
900 North Rock road
Ft. Pierce, FL 34945